PETER A. WEISE, Appellant, *v.* SAMUEL SMITH, Respondent.

### *Appeal from Clackamas County.*

Navigable Stream.—How far the principles and rules pertaining to the navigation of tide waters and large streams, are to be applied to fresh water streams above the flow and ebb of the tide.

Idem.—The common law rule, making the "ebb and flow of the tide the test of navigability" is not now applicable in the United States.

Idem.—If a stream is capable in its natural condition of being profitably used for any kind of navigation, its use to that extent is subjected to the general rules of law relating to navigation.

Idem.—Such a stream, generally useful for floating boats, rafts, or logs, or for any useful purpose of agriculture or trade, though it be private property, and not strictly navigable, is subject to the public use as a passage way.

Booms.—How far such stream may be obstructed by use, or by booms, etc.

Riparian Rights.—The right, to meddle with or touch upon the banks of such a stream, is founded upon necessity.

IDEM.—The riparian owner has an absolute right to enjoy his lands, in all proper ways—the other party has an absolute right, as one of the public, to navigate the stream—neither can justly deprive the other of his rights and their incidents.

TRESPASS.—If there had been no necessity for fastening a boom to plaintiff's land, that act was a trespass—that necessity was a question for the jury.

REASONABLE TIME.—Keeping such boom fastened too long would be an obstruction—what was a reasonable time for removal of boom is a question for the jury.

THE complaint in this action alleges in substance, that Peter A. Weise, the plaintiff, is the owner of the land situated at the mouth of the Tualatin river, upon the southerly side thereof, and that Samuel Smith, the defendant, placed a boom fast upon the land of the appellant, and kept it across said river, to the damage of the plaintiff in the sum of five hundred dollars.

The answer sets up in substance, that the respondent was engaged in the business of floating saw logs in the Tualatin river, from points on the said river above plaintiff's land, to the sawmills, that are in the vicinity of Oregon City. That the Tualatin, although a navigable stream, for the purpose of rafting saw logs, cannot be used for that purpose without placing a boom where respondent's boom was placed. That placing said boom there was necessary, and that the defendant had a right so to place it. That it was so placed for public use free of charge—that the public had a right to use the river for the floating of logs. The evidence disclosed that the Tualatin river, immediately above its confluence with the Willamette river, that being where the boom was placed, was for a short distance navigable for large vessels; and from a point two or three miles above the place of the boom, it was navigable for small steamboats up the stream, a distance of twenty-five or thirty miles. That, although for a space of two or three miles above where the boom was placed, the river is not otherwise navigable, yet saw logs can be conveniently and profitably floated the whole distance from the highest point of navigation, down the Tualatin river into the Willamette river. But owing to the situation of the confluence of these rivers, which is a short distance above

Weise v. Smith.

the Willamette falls, unless a boom is so placed as to retain the saw logs on their reaching the mouth of the Tualatin, the logs would necessarily be swept over the falls by the current of the Willamette, and thus lost. It had been a practice of people, who were engaged in transporting logs down that river, to detain the logs by means of such a boom. While receiving logs into the boom its upper end was attached to a small island in the Tualatin, the property of the plaintiff, from which the line of boom passed down the Tualatin to its mouth, and into the waters of the Willamette, the lower end curving south and being made fast to the bank of the Willamette south of the mouth of the Tualatin. When thus used the line of the boom intercepted the most convenient course of the plaintiff's skiff, in which he was accustomed to pass to and from Oregon City, his ordinary market place. The boom was so constructed that, when not receiving, but merely retaining logs, the upper end could be detached from the island and made fast to the south bank of the Tualatin, in such a manner as not to leave the boom in the way of the plaintiff's skiff. On the occasion complained of, the defendant having attached the boom to the island, it remained in that condition about —— days. There was evidence tending to show that during that time high water rendered it impracticable to make the change and remove the boom out of plaintiff's way. Judgment was rendered in favor of the defendant, and the plaintiff appeals, assigning as error:

1st. Admitting evidence to show that plaintiff had perviously permitted booms to be placed and used in the same manner without objection.

2d. In instructing the jury, that if the Tualatin was adapted to floating logs, and a boom was necessary for that purpose, the plaintiff's right was subrogated to a reasonable use by the public.

3d. In permitting the jury to determine whether the boom was extended an unreasonable time.

*Wait & Kelly*, for the appellant.

*Johnson & McCown,* for the respondent.

UPTON, J.   It is conceded in the argument, that, to some extent, or for some purposes, the Tualatin river is a navigable stream from its mouth to many miles above the place in question.   At the point of the alleged trespass, or a short distance above it, the river is not navigable for boats, but for the whole distance, the stream is available as a means of conveyance for saw logs.   One of the circumstances set up by the plaintiff, as a basis for additional damages, is that immediately at the place where the boom was stretched, the plaintiff had occasion to navigate the river with his skiff; and that, by the alleged wrongful acts of the defendant, that navigation was interrupted.   The chief inquiry and point in issue, touches the relation and liabilities existing between riparian proprietors, and persons using the stream, for purposes connected with navigation.   It is necessary to consider how far the principles and rules that have been applied to affairs pertaining to the navigation of tide waters and large streams, capable of floating ships of commerce, are to be applied to streams like the one under consideration.   While it is conceded by the appellant, that the Tualatin river is to a certain extent navigable, it is claimed that it is " a fresh water stream above the ebb and flow of the tide," and hence the rules applicable to arms of the sea, and great rivers, where the tide ebbs and flows, are not applicable here.

, It may be considered the settled law of the United States, that so much of the doctrine of the common law of England, as made the ebb and flow of the tide a test of navigability, is not now applicable in the United States.   On the contrary, the maxim of Lord Mansfield, "out of the fact arises the right," is applied by the courts of this country.   (*Morgan* v. *King*, 35 N. Y. 454; *Jones* v. *Pettibone*, 2 Wis. 308.)

It is held more rational to determine the question of navigability or unnavigability of a stream, from the fact of navigation or otherwise, than from a circumstance which

may or may not be conclusive evidence of its navigability. (*People* v. *Canal Appraisers*, 33 N. Y. 472.).

The case just cited, is a very full and thorough exposition of the test of navigability, and it is more than inferable, from the reasoning in that case, and in the numerous American cases there cited, that if a stream is in fact capable, in its natural condition, of being profitably used for any kind of navigation, its use is to that extent subjected to the general rules of law relating to navigation, applicable to the circumstances of the case. The large amount of lumber business done in the state of Maine, has undoubtedly led the courts of that State to give great consideration to the particular subject involved in this case, and they hold to the same rules on the subject of the use of small streams, that are announced in the case last cited. A stream, which, in its natural condition, is capable of being commonly and generally useful for floating boats, rafts or logs, for any useful purpose of agriculture or trade, though it be private property, and not strictly navigable, is subject to the public use as a passage way. (*Brown* v. *Chadbourne*, 31 Maine, —; 42 Maine, 558.)

"Though the adaptation of the stream to such use may not be continuous at all seasons, and in all its conditions, yet the public right attaches and may be exercised whenever opportunities occur." (Id.) "When a stream is inherently and in its nature capable of being used for the purposes of commerce, for the floating of vessels, boats, rafts or logs, the public easement exists, notwithstanding it may be necessary for persons floating logs to use its banks." (Id.) "The Penobscot river above the tide is not a navigable stream, technically speaking, although a highway, floatable for boats, rafts or logs, and as such, subject to the public use." (*Veazie* v. *Dwinell,* 50 Maine, 479.)

"No person has a right to permanently obstruct the channel of such stream by a boom across it, though he may do so temporarily, if necessary for the useful navigation of the stream." (*Davis* v. *Winslow*, 51 Maine 264.)

The court in this case remarks : "What is reasonable use, or due use, depends in every case on the subject matter, to which the case is to be applied, and the circumstances attending the subject matter at the time." Every person has an undoubted right to use a public highway, whether upon land or water, for all legitimate purposes of trade and transportation, and if in doing so, while in the exercise of ordinary care, he necessarily and unavoidably impede or obstruct another temporarily, he does not thereby become a wrong doer; his acts are not illegal, and he creates no nuisance, for which an action can be maintained. If we concede the correctness of the reasoning in the above cases, it follows, 'that upon "a stream capable of being commonly and generally useful for floating boats, rafts or logs, for any useful purpose," and consequently "subject to the public use as a passage way," the persons lawfully using it can invoke in their favor all general rules of navigation that are in the nature of things applicable to the particular circumstances and kind of navigation. How far, then, may one, who has an undoubted right to navigate the stream, meddle with or touch upon the bank of the stream, which is private property? Whatever he has is founded upon necessity. If he has a right to meddle with the bank, it is only an incidental one. Although the riparian owner has an absolute right to enjoy his land, in all proper ways, the adverse party has an absolute right, as one of the public, to navigate the stream. Neither one can justly deprive the other of his rights. If the riparian proprietor could deny the navigator the right to come to land, in a case where the business of navigating could not be performed, without the privilege of landing, he could deny all use of the stream. He would thus overturn all that was contended for and adjudged in the cases above cited. While it is beyond question that the riparian owner is entitled to be protected from any unnecessary intrusion on his premises, it is equally certain that he cannot, solely for the maintenance of an abstract right, or an exclusive possession, deny to the public the

right of navigation.   He takes his title subject to this right vested in the public.

If there had been no necessity for fastening the boom to the plaintiff's land, the act of fastening it would have been a trespass, for which the plaintiff ought to recover nominal damages at least; but, if the act was necessary in order to enable the plaintiff to exercise a right of navigation, no cause of action would lie for a bare intrusion, which worked no appreciable damages.   Whether the necessity existed was a question for the jury.

It was said in argument " the respondent claims the right to obstruct the river as a public right."   I think this was stating the respondent's claim too strongly; he claimed the right to attach his boom as a public right, and as necessary in order to use the stream, and it is true that the boom if kept attached too long became an obstruction, but he sought to excuse his act of leaving the boom attached a considerable time upon the plea that an unexpected rise of water rendered it impossible to detach it sooner.   If he had a right to extend the boom to catch the logs, he of course had a right to keep it extended a reasonable time for that purpose. The question, what was a reasonable time for the removal of the boom was a question of fact, and was properly left to the jury.   The record does not disclose that the plaintiff was injured, or that admitting proof that the plaintiff had permitted booms to be placed on his land on previous occasions the court erred in that particular; for aught that appears by the record, it may have been properly offered in mitigation of damages.

Judgment should be affirmed.