# CASES

## IN THE

# SUPREME JUDICIAL COURT,

### OF THE

## STATE OF MAINE.

OTIS W. BROOKS *vs.* CEDAR BROOK AND SWIFT CAMBRIDGE
RIVER IMPROVEMENT CO.

Oxford. Opinion June 5, 1889.

*Eminent domain.    Public streams.    Damages.*

The legislature has the constitutional power to authorize the erection of dams
upon non-tidal public streams to facilitate the driving of logs, without pro-
viding compensation for mere consequential injuries where no private
property is appropriated.

Where such a dam, erected in accordance with legislative authority, causes
an increased flow of water at times in the channel below thereby widening
and deepening the channel and wearing away more or less the soil of a
lower riparian owner, it is not such a taking of private property as entitles
the owner to compensation.    It is a case of *damnum absque injuriâ.*

REPORT, on facts agreed.

The defendant company is a duly organized corporation under
its charter, and by virtue thereof, has made extensive improve-
ments in the streams named in it, for the purpose of facilitating
the driving of logs.    Among other improvements, the company

built a dam across the Swift Cambridge river, at a point about four miles, as the river runs, above the plaintiff's land in Grafton. A head of about five feet of water can be obtained by the dam. The gate in the dam is about seven feet wide. Log-owners who have landed their logs on said river above the plaintiff's land, have used said dam and the other improvements of the company for driving purposes. The greatest increase in height that is usually produced in the river, where it crosses the plaintiff's land, by opening the gate, is one foot.

The action of the logs and water have tended to deepen and widen the stream by gradually wearing away the soil of the banks and bottom across the plaintiff's land.

The defendant company has allowed log-owners to use the dam and improvements, paying therefor the charter toll, but has never itself used the dam for the purpose of driving logs, and has never undertaken the driving of logs in any of the streams named in its charter.

If the defendant is liable for the wearing away of the banks as aforesaid, the damages are to be assessed by a referee agreed on ; otherwise judgment to be for the defendant.

*D. Hammons,* for plaintiff.

When defendant accepted the charter it promised, by implication, to pay damages as provided in § 2. Defendant has collected tolls, given by the act, and has in its hands the damage done to plaintiff and others. If defendant has not itself driven the logs, it has permitted others to use its franchise, and accepted payment therefor.

The ownership of the soil washed away may be in plaintiff, but defendant has deprived him of its use and possession. Counsel cited, Const. of Maine, Art. 1, § 21.

*A. E. Herrick,* for defendant.

The wisdom of the act, and extent of public convenience requiring it, have been passed upon by the legislature. *Spring* v. *Russell,* 7 Maine, 273, 292. No claim is made of unauthorized or negligent acts. Company was authorized to build dams, etc. The only compensation provided is for land and materials taken.

There was no taking which deprived plaintiff of his title, or part of it, so that the entire dominion over it no longer remained with him. *Cushman* v. *Smith*, 34 Maine, 247.

Floating logs down the river was lawful without any charter ; floating them by using defendant's improvements was made lawful by the charter.

A man may be injured in his property, and be without remedy. *Lawler* v. *Baring Boom Co.*, 56 Maine, 443 ; *Spring* v. *Russell*, 7 Id. 273 ; *Whittier* v. *R. R.*, 38 Id. 26 ; *Boothby* v. *R. R.*, 51 Id. 318.

Company did no driving of logs. It could not control the acts of those using its improvements, and not liable for anything so remote and consequential. *Sumner* v. *Richardson Lake Dam Co.*, 71 Maine, 106, 109.

EMERY, J. Facts agreed. Swift Cambridge River in Maine is a non-tidal stream, but is capable in its natural state of floating to market, logs and other products of the forest, and hence is a public highway for all the people of the state. *Brown* v. *Chadbourne*, 31 Maine, 9. The legislature authorized the defendant company, among other things, to build dams across this river for the purpose of facilitating the driving of logs, and improving the navigation. Special laws of 1877, c. 106. The defendant company in pursuance of its charter, and for the purposes named, built a dam across the river, about four miles above the plaintiff's land. There is no suggestion, in the statement of facts, that the dam is not properly constructed and not wholly within the terms of the defendant's charter.

The head of water accumulated by this dam increases the flow below the dam, when the gates are opened for the passage of logs. This increased flow facilitates the driving of the logs, which is the object of the company's charter and works. The greatest increase in the height of the river, where it passes through the plaintiff's land, caused by this increased flow, is one foot. The action of this increased flow of water, and of the logs borne along upon it, "have tended to widen and deepen the stream by gradually wearing away the soil of the banks and bottom across the plaintiff's land."

The plaintiff brings this common law action to recover damages for that injury to his land. He makes no other complaint. None of his land has been appropriated by the defendants. They have not flowed, nor occupied his land. They have not diverted any water from, or upon it. So far as appears, they have by their erections detained the water a reasonable time, and let it down in reasonable quantities, at proper seasons. This is just what is being continually done on nearly every stream in the state, and what every riparian owner submits to with little thought of claiming damages.

The plaintiff's injury, if any, does not flow from the wrongful act of any one, and hence is *damnum absque injuriâ*. To hold otherwise,—to hold that the mere tendency of an increased flow of water, at times, in its natural channel to wear away soil, is in itself a cause of action against the owners of mills and dams, would prevent all improvement of inland navigation, and would paralyze all industries dependent on water power. A law, requiring such a judgment, can never have been established by the people.

The plaintiff urges, however, that the legislature can not authorize the improvement of the navigation of the public streams of the state, without providing compensation to riparian owners for such injuries as his. It may be at once conceded fully, that the legislature can not authorize the taking any property of a riparian owner, for use in improving the navigation, without providing compensation. If riparian land is taken for storage of water, or for a receptacle for discharged waters, or for dams, locks, etc., the owner is entitled to compensation for the injury caused by such taking. This concession, however, does not include incidental injuries, where no land is appropriated, and no water is diverted.

The riparian owners on all public streams in this state, hold their riparian lands subject to the paramount right of navigation of such streams by the public. The public right of navigation existed before the private ownership of the land under or adjoining the public streams. The title to the whole, lands and rivers, was first in the Sovereign, whether King, Province or State. In

all the grants of lands from the Sovereign, there is always, at least unless otherwise expressly stipulated, a reservation of the public right to use all navigable rivers as public highways. Such a reservation naturally and properly retains with it the right for the Sovereign to make and authorize all reasonable improvements, from time to time, to facilitate the use of the river by the public, even though the land owner thereby suffers inconvenience or loss, so long as none of his property is actually appropriated by the Sovereign. This sovereign right has been continuously exercised in this state since its first settlement, and by the general, if not universal consent of all its citizens. The statutes of nearly every legislative session, contain acts authorizing the improvement of rivers as public highways, by the erection of dams, and applying to nearly all the public rivers of the state. All these acts assume the right of the state to make such improvements, without making compensation, except where private property is actually appropriated. The general statute authorizing the erection of dams for creating water power, contains no provision for compensation to riparian owners, when the stream is not diverted, nor the land overflowed. The early, long continued, and universal acquiescence in the exercise of such a right, is the strongest evidence of its existence. A judicial decision can hardly be necessary to establish it.

The courts, however, have recognized this right of the state. In *Moor* v. *Veazie*, 32 Maine, 343, 357, the court, through chief justice SHEPLEY, declared, (quoting from Hale *de jure maris*, c. 4, prop. 3) that "the common law accorded to the sovereign power the 'care, supervision and protection' of the common right of navigation in navigable rivers," and the court further used the following language : "The power which has 'the care, supervision and protection' of a common right, is bound to regulate its use in such manner, that it may be safe and convenient. The duty to make the use safe and convenient, involves the right to remove obstructions, to improve, or to render more safe and convenient the water for the purpose of navigation." In *Sumner* v. *Richardson Lake Dam Co.*, 71 Maine, 106, it did not appear that the defendants' dam in any way caused the injury complained of,

and hence the case is not directly in point. Still, the defendant company was chartered to build dams to improve the navigation of a public stream and the court plainly intimated that the charter was lawful, though it did not provide compensation for consequential injuries,—such injuries as are complained of here.

In other states, this question between the state, and the riparian owners, has been directly presented and adjudicated. In *Hollister* v. *Union Co.*, 9 Conn. 436 the defendant company was authorized by the legislature to build piers, wharves, bridges, etc., in the Connecticut river to improve its navigation. The company's works, built under its charter, deflected the current of the river against the plaintiff's land washing it gradually away. It was held that the plaintiff had no cause of action. The decision was put on the ground, that the state had the control of the river, and the right to improve its navigation, by any appropriate means and that every grantee of land on the river took, subject to that right. In *Holyoke Water Power Co.* v. *Conn. River Co.*, 20 Fed. Rep. 71 the same doctrine was upheld by the federal court in the Connecticut district. In *Henry* v. *Railroad Co.*, 30 Vt. 638, the defendant company, in pursuance of legislative authority, constructed works that turned the current of a stream, so that it washed away the plaintiff's land. It was held that the injury was consequential only, and that the plaintiff could not recover. In *Alexander* v. *Milwaukie*, 16 Wis. 264, the city, under legislative authority, made a "straight cut," across a point of land, to improve the harbor. The current flowing through this straight cut came against and wore away the plaintiff's land. *Held*, that the plaintiff had no cause of action. In *Green* v. *Swift*, 47 Cal. 536, the defendants, by legislative authority, changed the current of American river, so as to make the floods less dangerous at Sacramento. This change caused the current to wash the lands of the plaintiff. *Held*, that the defendant was protected by the legislative authority. In *Monongahela Nav. Co.* v. *Coon*, 6 Pa. St. 383, the company, under its charter, built dams and locks in the Monongahela river to improve its navigation. These works so held back the water as to retard the current in the Youghiogheny river above, to the injury of the plaintiff. *Held*,

that the state had the right to improve the navigation of its rivers, and that the plaintiff had no cause of action. The same doctrine is well expressed in a later Pennsylvania case, *McKeen* v. *Del. Canal Co.*, 49 Pa. St. 439, by Agnew J., as follows: "The injury which followed the raising of the water in the stream, to improve the navigation, was not a taking of property, but one merely consequential, which he must suffer without compensation. Every one who buys land upon a navigable stream, purchases subject to the superior right of the state, to regulate and improve the stream for the benefit of all her citizens."

It is urged, however, that the defendant's charter makes them responsible in this action, for the plaintiff's injury. By the second section of the charter, the company is authorized to take land and materials, "being accountable to the owners thereof, for all damages, if any, to be ascertained by reference, or by actions on the case." This does not include consequential injuries. The right of action here specified, is clearly confined to land and materials taken by the company. No land nor materials have been taken in this case. *Hollister* v. *Union Co.*, 9 Conn. 436, *supra*.

Judgment for the defendant.

PETERS, C. J., WALTON, DANFORTH, VIRGIN and HASKELL, JJ., concurred.