[No. 4982.   Decided September 21, 1904.]

WOODMAN MATTHEWS, *Respondent*, v. BELFAST MANUFACTURING COMPANY, *Appellant.*[1]

EMINENT DOMAIN—WATERWAYS—LOGGING—CONDEMNING RIGHT TO USE STREAM FOR FLOATING LOGS. A private corporation which is not a boom company is not entitled to exercise the right of eminent domain against a lower riparian owner for the purpose of facilitating the floating of logs down a stream by means of dams and artificial freshets, which damage the lower proprietor and interfere with his use of the stream.

WATERS—NAVIGATION—FLOATING LOGS—NUISANCES — DAMS —ARTIFICIAL FRESHETS—INJUNCTION. The floating of logs down a

[1]Reported in 77 Pac. 1046.

stream by means of dams and artificial freshets at a time of the year when it is not navigable in its natural state, is an abuse of the right of navigation, for which an injunction will lie at the suit of riparian owners injured thereby.

SAME—INJUNCTION—TERMS OF.    In such a case an injunction is not too sweeping where it permits the defendant to use its dam for lawful purposes.

SAME—DEFENSES—IMPROPER USE OF STREAM.    An action to enjoin the defendant's abuse of the rights of navigation, by the use of dams and the creation of artificial freshets in a logging stream, will not be defeated by the fact that the plaintiff, also, maintains a dam for the same purpose, where the evidence shows that his use thereof is reasonable and proper, and his dam is not a nuisance.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered July 17, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, enjoining the obstruction and unlawful use of a logging stream. Affirmed.

*Million & Houser,* for appellant.

*Smith & Brawley* and *Carr & Preston,* for respondent.

FULLERTON, C. J.—The appellant and respondent each own timber lands in Skagit county, through which the east fork of the Samish river flows; the lands of the appellant being higher up the stream than those of the respondent, although the lands abut upon each other.   The Samish river is an unmeandered stream, having an average width between banks of some fifty feet, and during the wet season of the year is capable of floating such mill timber as grows upon its banks, and in its immediate vicinity.   In the dry season it is not navigable without artificial aids, having at such time a depth of less than two feet in many places.   The respondent, some years prior to the commencement of this action, had been engaged in logging on his own premises,

and had constructed a dam across the river on his own lands some distance below the lands of the appellant. This dam he has kept up ever since, maintaining therein, as he says, suitable gates through which logs pass unobstructed during the time of the year when the stream is high enough to float them.

In the summer of 1903, the appellant began logging off of its own lands. To facilitate the work it constructed a dam across the river about one and one-half miles above the respondent's dam. This dam it used, not only to retain logs until they were ready to be sent down the river, but, also, to create a storage basin for water, by means of which it could cause splashes, or artificial freshets, in the stream, and thus drive logs down the same after it became too shallow to float them in its natural state. The appellant operated in this manner: It would put into the bed of the river as many logs as could be readily driven; then it would open the gates of its own dam, and drive the logs down the stream as far as the dam of the respondent; from there, by repeated splashes from both dams, it would drive them to the deep waters of Bellingham Bay, into which the Samish river flows. In these operations the appellant found it necessary to use the respondent's dam, and it took possession of the same against the consent, and over the protest, of the respondent, and used it as if it were its own property. The appellant, also without the consent and against the will of the respondent, made such use of the respondent's land bordering the stream as it found necessary and convenient in order to drive its logs. The artificial freshets or splashes, created by means of the dams, drove the logs down the stream in lots or jams, which tore down and washed away the river's banks, forming a river bed out of what was before tillable land.

The respondent instituted this action to enjoin the appellant from using his property in the manner stated, and from floating logs down the stream across his property by means of artificial freshets and splashes, alleging, in his complaint, substantially the foregoing facts.

To the complaint the appellant answered, denying all its material allegations, and, by way of cross-complaint, alleged that it had gone to great expense to prepare for logging its premises, and that, if stopped by the court, would suffer irreparable injury; further alleging that it had instituted condemnation proceedings against respondent, for the purpose of acquiring the right to use the stream by means of splash dams therein, where necessary. It also alleged that the dam of respondent was an obstruction to navigation in the stream, and therefore a nuisance. It prayed for relief appropriate to matters set up in its answer. The new matter in the answer was put in issue by a reply, and a trial had before the court, resulting in a permanent injunction against the appellant, enjoining it from operating either of the splash dams mentioned, and from in any manner interfering with the possession or use of the respondent's land. There was a claim for damages made by the respondent for injuries already accrued, but the amount of the damages, if any, the court expressly refused to find, leaving the question as to the amount open to a determination by a jury, in an action to be brought for that purpose. This appeal is from that judgment.

The first contention on the part of the appellant, namely, that it has the right to condemn a right of way along the stream over the respondent's land for a logging way, is determined against it by the case of *Healy Lumber Co. v. Morris,* 33 Wash. 490, 74 Pac. 681. It was there held that the

statute attempting to confer upon the owner of timber lands the power to condemn a right of way for a logging road and lumbering purposes was in contravention of the state constitution, and therefore void. As there is no such right independent of the constitution and statute, it is plain that the appellant's action to condemn can avail it nothing, and its plea that it has brought such an action does not require the court to await its result before restraining it from making an unlawful use of the respondent's property. It is true, this court has upheld the statute relating to the organization of boom companies, which had for its object the improvement of streams, such as the one in question, so as to make them floatable for logs at all seasons of the year, but that statute does not aid the appellant. The appellant is not organized as a boom company. It does not purpose improving the stream for the use of the public, and engaging in the business of transporting logs down it for the public, but seeks to acquire the right for its own private benefit, to the exclusion of every one else. This it cannot do by the exercise of the right of eminent domain. It has no power to exercise such a right. *Healy Lumber Co. v. Morris, supra.*

The next contention is that the court erred in enjoining the appellant from floating logs down the stream by means of artificial freshets and splashes. The argument is that the stream is a navigable one, and that it has the right to use it for the purpose of floating logs, and is liable only for a misuse or abuse of the privilege, and that the evidence fails to show that there was any abuse or misuse in the present case. The stream in question is undoubtedly navigable for floating logs for a part of the year, and during that time the appellant, as well as others, may use it for that purpose. But that is not the case before us. The

appellant was not attempting to float logs during the navigable season of the year, but was attempting to do so when the stream, in its natural state, would not float them. It sought to remedy this by creating unnatural conditions—by the creation of artificial freshets—which conditions damaged and destroyed the respondent's property. This was an abuse of the right of navigation, and for that an injunction would properly lie. *Watkinson v. McCoy*, 23 Wash. 372, 63 Pac. 245; *Monroe Mill Co. v. Menzel, ante,* p. 487.

It is next said that the injunction is too sweeping, in that it prohibits the appellant from operating its dam for any purpose, but a reading of the context of the judgment clearly shows that all that was meant was that the appellant should not operate it to float logs down the stream by means of artificial freshets and splashes, and not that it could not use it for such other purposes as it might find convenient in the conduct of its business.

It is further contended that the respondent is not entitled to relief because his dam is an obstruction to navigation, and he ought not to be allowed to complain of the appellant so long as he was making a misuse of the stream. But if this were a sufficient reason for denying the respondent the right to relief, we fail to find that the contention is supported by the evidence. An officer of the appellant did testify that logs could not be floated down the stream without making use of the respondent's dam, but he was speaking of floating logs by means of freshets and splashes, and not of floating when the stream would convey them in its natural state. On the other hand, the respondent testified that his dam did not obstruct the river, that he had constructed in it gates through which logs and other timber products could pass whenever the stream was capable of floating them. We think, therefore, that

the evidence was insufficient to warrant the court in declaring the dam a nuisance, and ordering its removal. In order to successfully market logs by the use of a stream of this character, dams and booms are necessary; in fact, such streams can hardly be used for navigating logs without them. Being necessary, their use is lawful when reasonably exercised, and it is only when the right is misused or abused that other navigators can complain of them as obstructions. We do not wish, however, to be understood as foreclosing the appellant's right to complain, should the dam prove to be an obstruction, when an actual test under normal conditions is made. Should it then prove to be a nuisance, the appellant, or any one injured by it, may have it corrected by an action brought for that purpose.

As we find no substantial error in the record, the judgment appealed from will stand affirmed.

MOUNT, DUNBAR, AND ANDERS, JJ., concur.