[No. 6852.    Decided January 15, 1908.]

THE STATE OF WASHINGTON, *on the Relation of O. P. Burrows et al., Plaintiff,* v. THE SUPERIOR COURT FOR CHEHALIS COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—RIPARIAN RIGHTS—LOGS AND LOGGING—STATUTES—CONSTRUCTION.  Under Bal. Code, § 4388, conferring upon boom companies tne right to condemn "shore rights and other property upon the river," and § 4390 providing that it shall be unlawful to take "lands or sloughs" within territory of certain remonstrancers, a remonstrance does not affect the company's power to condemn a right to maintain splash dams some miles up the river above the lands of the remonstrancers, as none of their "lands or sloughs" are sought to be appropriated.

Certiorari to review an order of the superior court for Chehalis county, Linn, J., entered June 15, 1907, after a hearing on the merits, adjudging a public use and directing an assessment of damages in a condemnation proceeding.    Affirmed.

*J. C. Cross, A. Emerson Cross, Bogle & Spooner,* and *J. W. Robinson,* for relators.

*Ben Sheeks* and *J. B. Bridges,* for respondents.

CROW, J.—On March 28, 1907, the Humptulips Driving Company, a corporation, instituted in the superior court of Chehalis county proceedings to condemn certain property rights of O. P. Burrows and Alice Burrows, his wife.    After

[1]Reported in 93 Pac. 426.

the entry of a preliminary decree ádjudging a public use, the defendants applied to this court for a writ of certiorari, and the writ having been issued, the decree is now before us for review.

The application herein was made to this court at the same time a like application was made in *State ex rel. Burrows v. Superior Court,* No. 6853, in which we have this day affirmed decrees of the superior court. [*Ante* p. 277, 93 Pac. 423.] Practically all assignments of error made in that proceeding are repeated here, and we will in this opinion only consider one point not then presented. The respondent the Humptulips Driving Company was organized under "An act to provide for the organization and incorporation of companies for clearing out and improving rivers and streams in this state, and for the purpose of driving, sorting, holding, and delivering logs and other timber products thereon," etc. Laws 1895, p. 128, ch. 72; Bal. Code, §§ 4387 to 4394 (P. C. §§ 7120-7127). In its petition the respondent alleged that, within the statutory time, it filed its plat as required by Bal. Code, § 4389, showing shore lines of waters of the Humptulips river in Chehalis county, and lands contiguous thereto, proposed to be appropriated; that it has erected, maintained, and is now operating in the Humptulips river and its tributaries, many miles above the lands of the relators, certain splash dams for creating artificial freshets to aid it in driving sawlogs and other timber products into a boom near the mouth of the river; that the relators own certain described tracts of land contiguous to and bordering upon the west banks of the Humptulips river; that it is at times necessary for respondent to create artificial freshets by means of its splash dams, and that it is also necessary for it to condemn and appropriate as against the relators the right to create such artificial freshets in so far as their private riparian rights may be affected, and also the right to drive sawlogs down the river by means of such artificial freshets. The respondent had been operating

upon the river for a number of years, when the relators insti-
tuted an equitable action against it and the Grays Harbor
Boom Company to enjoin them from interfering with the re-
lators' riparian rights, and secured an injunction decree which
was affirmed by this court in *Burrows v. Grays Harbor Boom
Co.*, 44 Wash. 630, 87 Pac. 937. Thereupon the respondent
the Humptulips Driving Company instituted condemnation
proceedings in which it now seeks to appropriate the right to
create artificial freshets past the lands of the relators to the
extent that such freshets may interfere with their riparian
rights, and to drive sawlogs on such freshets, contending, how-
ever, that it does not intend to take or flood any of their
contiguous lands.

The relators answered, alleging that the Humptulips river
was and is affected by the tide for a distance of about three
miles above its mouth, and past their lands; that within the
time fixed by Bal. Code, § 4390 (P. C. § 7124), the relators
and others being then owners of more than one-half of the
lands lying alongside and abutting that portion of the Hump-
tulips river affected by the tide, filed in the office of the
auditor of Chehalis county, their written remonstrances
against the respondent's contemplated improvement of that
portion of the river affected by the tide; and that the re-
spondent is therefore estopped from making the appropria-
tion it now asks. The evidence shows that this remonstrance
was signed by owners of more than one-half of the lands con-
tiguous to that portion of the river affected by the tide, but
that it was not signed by owners of one-half of the lands con-
tiguous to the entire river, or to that portion of the river
used by the respondent and which it has improved or now
seeks to improve. The contention of the relators for an
estoppel is based upon Bal. Code, § 4390, *supra*, reading as
follows:

"Such corporation shall have power and is hereby author-
ized, in any of the rivers and streams of this state, or the divid-
ing waters thereof, to remove jams, roots, snags and rocks,

improve and straighten the channel, build wing dams and sheer booms, construct dams with gates or otherwise for the purpose of storing water with which to produce artificial freshets, and in all ways to improve such streams and rivers for the purposes herein mentioned and contemplated: . . . . Provided, however, That whenever the owners of more than one-half the land lying alongside or abutting on any stream affected by the tide, proposed to be improved according to this act, shall file with the board of county commissioners of the county in which said river is situated a remonstrance against any improvements of so much of the stream as is affected by the tide, it shall then be unlawful for any corporation to take the land or any slough within the territory owned by any such remonstrancers: Provided, That such remonstrance shall be filed with said board within fifteen days from the filing of said plat."

The evidence shows that portions of the Humptulips river are about two hundred and fifty feet in width; that the respondent's splash dams are respectively fourteen, twenty-five, and thirty miles above the relators' lands; that the stream is floatable for logs during certain seasons of the year at times of natural freshets, and with the aid of artificial freshets at other times; and that there is a vast amount of tributary timber dependent upon its use for being carried to market. What effect do the remonstrances filed and pleaded have in this case? Must the statute be so construed as to hold that such remonstrances will prevent any condemnation of the right to create and use artificial freshets in the stream past relators' lands?

Bal. Code, § 4388 (P. C. § 7121), confers upon the respondent the right to acquire by condemnation if necessary, land, *shore rights or other property upon the river*. Section 4390, above quoted, provides that, when the remonstrances are legally made and filed, it shall be unlawful for the driving company to take *lands or sloughs* within territory owned by the remonstrancers. Construing these two sections of the same act together, it is evident that the legislature intended to dis-

19—48 WASH.

tinguish lands and sloughs from shore rights and other property, and that while *lands or sloughs* may not be taken as against remonstrances, the statute does not make it unlawful to take *shore rights or other property* subject to appropriation. The respondent is not attempting to appropriate any land, but seeks only to interfere with the relators' riparian rights by creating artificial freshets in the river, thus interfering with the natural flow of the water, without flooding or taking their contiguous lands.

The respondent contends that under the statute, it is necessary for the remonstrances to be signed by the owners of more than one-half of all lands abutting the river above, as well as along that portion affected by the tide. While there is merit in this contention, we do not find it necessary to pass upon the same, for assuming without deciding that the remonstrances are sufficient, and that they need only be signed by the owners of one-half of the land abutting that portion of the river affected by the tide, yet the relators' plea of estoppel must fail, as the respondent is not appropriating any *land or slough* owned by them. The statutory authority to appropriate shore rights and other property of the relators is not affected by the remonstrances, and under that authority respondent now seeks and is entitled to condemn the right to create artificial freshets. No part of relators' lands will be taken, and it is not contended that the driving company is attempting to violate the statute by taking any slough.

The judgment is affirmed.

HADLEY, C. J., MOUNT, ROOT, FULLERTON, RUDKIN, and DUNBAR, JJ., concur.