[No. 6880.   Decided March 4, 1908.]

KALAMA ELECTRIC LIGHT & POWER COMPANY, *Respondent*, v. KALAMA DRIVING COMPANY, *Appellant*.[1]

WATERS AND WATER COURSES—RIPARIAN RIGHTS—INJUNCTIONS— NAVIGABLE WATERS — RIGHTS OF DRIVING COMPANY — ARTIFICIAL FRESHETS. A riparian owner has the right to the natural flow of a stream through its lands for the purpose of creating power for its electric light plant, and may enjoin a log driving company from retarding the flow, to the injury of such owners, for the purpose of creating artificial freshets for the driving of logs down a stream which is not navigable for the floatage of logs at certain stages without such artificial means; the driving company having acquired no right to such use by condemnation proceedings.

Appeal from a judgment of the superior court for Cowlitz county, McCredie, J., entered June 13, 1907, upon findings in favor of the plaintiff, upon an agreed statement of facts, in an action to enjoin interference with the rights of a riparian owner to the waters of a navigable stream.   Affirmed.

*Coovert & Stapleton*, for appellant.

*A. L. Miller* and *W. F. Magill*, for respondent.

CROW, J.—This action was commenced by the Kalama Light & Power Company, a corporation, against the Kalama Driving Company, a corporation, to enjoin the defendant from interfering with the natural flow of the waters of the Kalama river.   An agreed statement of facts was filed, upon

[1]Reported in 94 Pac. 469.

which the trial court made findings and entered a decree enjoining and restraining the defendant from interfering with the usual and natural flow of water in the Kalama river through, upon, and by the plaintiff's land, and from using artificial dams for storing water and creating artificial freshets.   The defendant has appealed.

The only question presented is whether this decree is supported by the findings.   The findings of fact material to this question, in substance, show that the respondent Kalama Light & Power Company is a corporation organized under the laws of this state for the purpose of manufacturing and dealing in electric light and power; that it owns real estate on which its electric power plant, head gates, flumes, and other structures are located; that the Kalama river, which passes over and through its lands, and from which it takes water for power purposes, is a swift, mountainous stream about sixty miles in length, of sufficient width, depth, and capacity to be floatable for logs and other timber products during natural annual freshets of the fall, winter, and spring; that respondent's intake and head gates are located at low water mark; that the river at all seasons by its natural flow furnishes water in sufficient quantities for the operation of the light and power plant; that after diverting the water through the intake and flumes, the respondent returns it to the bed of the river, on its own premises; that respondent's plant is extensive and valuable, furnishing light and power to inhabitants of Kalama and Woodland; that the Kalama Driving Company is organized for the purpose of clearing and improving navigable streams, especially the Kalama river, and driving, sorting, and delivering timber products; that it has complied with all the requirements of the laws of this state under which it is incorporated; that after respondent had installed its light and power plant and had appropriated water for power, the appellant entered upon the river and commenced to improve the same by removing boulders, timbers, and other obstructions,

by building wing dams, splash dams, and other structures, by creating artificial freshets upon which to drive logs, during seasons when they could not be driven for the want of natural freshets; that an enormous amount of timber tributary to the river can be profitably driven to market upon the stream, but that all of it cannot be transported on the natural freshets, or without the aid of artificial freshets; that the appellant in conducting its business as a driving company is about to construct a large splash dam, one-half mile above respondent's light and power plant, intending thereby to collect and store water for creating artificial freshets at seasons when no natural freshets occur; that at all times when the water is being collected by this dam, its flow past respondent's land will temporarily cease; that it will require at least nine hours to collect and store the water each time the dam is closed, which will be a number of times each week; that while the dam is thus closed, the respondent's plant will be compelled to remain idle for want of sufficient water to create power; that respondent is a riparian owner of land abutting upon the stream, being the land upon which its plant is located, and that it will be irreparably damaged if the appellant is permitted to continue its interference with the natural flow of the water.

The Kalama river is a navigable stream, being useful for the profitable floating of timber products at seasons when natural freshets occur. The appellant has, under the laws of this state, authority to improve the river, to clear it from obstructions, to construct wing dams, splash dams, and other improvements, and to collect and store water for artificial freshets, thereby extending the navigability of the stream for driving purposes. Appellant contends that, in making such improvements, it has the right to retard the natural flow of the water whenever necessary for the creation of artificial freshets, and to do so without interference from the respondent. It insists that the state itself has the right, in the absence of Congressional interference or control, to improve all navigable

streams for the purpose of securing better transportation facilities to the public; that it may do so without interference or protest from riparian owners whose land is not actually taken, destroyed, or submerged; that when it, by statute, authorized appellant and kindred corporations to make such improvements, it delegated its own power and authority to them; that such delegation of authority is valid; that floatable streams are navigable public highways, and that the statutory right of driving companies to erect dams and other improvements, and to create artificial freshets on such floatable streams thereby improving and extending their navigability for .public use, has been sustained by this court; citing: *East Hoquiam Boom & Logging Co. v. Neeson*, 20 Wash. 142, 54 Pac. 1001; *Watkins v. Dorris*, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *Lownsdale v. Grays Harbor Boom Co.*, 36 Wash. 198, 78 Pac. 904; *Dawson v. McMillan*, 34 Wash. 269, 75 Pac. 807.

Having made the above contention, the appellant further insists that, as long as it does not trespass upon or take physical possession of respondent's lands, does not flood or destroy any portion thereof, and is not guilty of negligence while driving timber products or creating artificial freshets, but confines its operations to the bed of the river, it will not be unlawfully interfering with any of respondent's riparian rights. In effect, it contends that any incidental damage resulting to respondent from its operations upon the river will be *damnum absque injuria*. In support of these contentions appellant cites numerous authorities, including the following cases from the states of Wisconsin, Maine, and Oregon, upon which it predicates its principal arguments: *Falls Mfg. Co. v. Oconto River Imp. Co.*, 87 Wis. 134, 58 N. W. 257; *Black River Imp. Co. v. La Crosse Booming & Transp. Co.*, 54 Wis. 659, 11 N. W. 443, 41 Am. Rep. 66; *Cohn v. Wausau Boom Co.*, 47 Wis. 314, 2 N. W. 546; *Brooks v. Cedar Brook & S. C. R. Imp. Co.*, 82 Me. 17, 19 Atl. 87, 17 Am. St. 459, 7

L. R. A. 460; *Weise v. Smith*, 3 Ore. 445, 8 Am. Rep. 621; *Felger v. Robinson*, 3 Ore. 455. These authorities, which to some extent sustain appellant's position, cannot be followed or approved by us if we are to continue in harmony with our previous holdings in Washington cases hereinafter mentioned.

The respondent, being a riparian owner upon the Kalama river, has, as such, valuable property rights which cannot be taken or damaged for the public use without compensation. One of these is its right to a continuance of the natural and ordinary flow of the water over, across, and past its lands. Gould, Waters (3d ed.), § 204. This riparian right, guaranteed by the common law, has been repeatedly recognized and protected by this court. In *Monroe Mill Co. v. Menzel*, 45 Wash. 487, 77 Pac. 813, 102 Am. St. 905, we said:

"It being established that the stream is a navigable one, and that appellant shall not interfere with respondent's navigation of it, we must next inquire as to the methods and limitations of that navigation. The court refused to grant appellant an injunction preventing respondent from continuing the storage of water in Lake Roesiger, and the periodic flushing of the stream. We think this was error. Under well established principles, appellant is entitled to the natural flow of the water across his land. *Crook v. Hewitt*, 4 Wash. 749, 31 Pac. 28; *Rigney v. Tacoma Light & W. Co.*, supra; *New Whatcom v. Fairhaven Land Co.*, 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190. It is said that, although language used in the above cases declares the general principle, yet there was an actual threatened diversion of a substantial portion of the water in each case, while, in the case at bar, there is no diversion, but simply a detention, followed by a restoration of all the water before it reaches appellant's lands. This detention, however, amounts practically to a total detention for irregular periods, and at times unknown to appellant, without warning, it is released in such quantities as to greatly increase the natural flow and, according to testimony in the record, actually causes an overflow of his lands."

In this case damages sustained by the respondent do not result from irregular and unexpected freshets created by the

sudden release of water through splash dams, but they are caused by an interruption of the natural flow of the river, depriving respondent of necessary water which, as a riparian owner, it is entitled to use in producing electric power. In *Matthews v. Belfast Mfg. Co.*, 35 Wash. 662, 77 Pac. 1046, we said:

"The next contention is that the court erred in enjoining the appellant from floating logs down the stream by means of artificial freshets and splashes. The argument is that the stream is a navigable one, and that it has the right to use it for the purpose of floating logs, and is liable only for a misuse or abuse of the privilege, and that the evidence fails to show that there was any abuse or misuse in the present case. The stream in question is undoubtedly navigable for floating logs for a part of the year, and during that time the appellant, as well as others, may use it for that purpose. But that is not the case before us. The appellant was not attempting to float logs during the navigable season of the year, but was attempting to do so when the stream in its natural state would not float them. It sought to remedy this by creating unnatural conditions—by the creation of artificial freshets—which conditions damaged and destroyed the respondent's property. This was an abuse of the right of navigation, and for that an injunction would properly lie."

See, also, *White v. Codd*, 39 Wash. 14, 80 Pac. 836.

The storing of water by the appellant's splash dams will so frequently and continuously retard the natural flow of the stream as to seriously interfere with and damage valuable riparian rights of the respondent. The operation of its light and power plant will be entirely obstructed while the water is being detained and stored by the dam. We are therefore compelled to hold that the appellant cannot thus damage or interfere with respondent's riparian rights, which are property rights, without first making full compensation. The power of appropriation by condemnation has been conferred upon appellant so that it may, by an exercise of the right of eminent domain, take or damage the property and shore rights of riparian owners in a lawful manner, making full compensation

therefor.   The legislature, in conferring authority to improve the river and create artificial freshets, did not delegate to appellant the right to take or damage the respondent's property and shore rights without compensation.   Any statute having such a purpose in contemplation would be in contravention of art. 1, § 16, of the state constitution and void.   That the legislature never intended to violate the constitution by attempting to confer such authority is disclosed by Bal. Code, § 4388 (P. C. § 7121), which authorizes driving companies to appropriate, in proper condemnation proceedings, such property and shore rights of riparian owners, as it may need for its use as a public service corporation.   The recent case of *Kamm v. Normand* (Ore.), 91 Pac. 448, is directly in point on the question of law here involved.   In that case the supreme court of Oregon uses the following language:

"Nor can a stream, navigable in its natural condition at certain stages of the water, be made so at other times by artificial means, such as flooding and the like.   No one has a right to store water, and then suddenly release the accumulation, and thus increase the natural volume of the stream, and overflow, injure, or wash the adjoining banks, or otherwise interfere with the rights of riparian owners.   The riparian proprietor is entitled to the enjoyment of the natural flow of the stream with no burden or hindrance imposed by artificial means."

In support of the above statement, the court cites and discusses a number of authorities, including *Matthews v. Belfast Mfg. Co.* and *Monroe Mill Co. v. Menzel, supra,* decided by this court.   It also distinguishes cases from Maine, Minnesota, and Wisconsin, some of which are cited by appellant.

The recent case of *Burrows v. Grays Harbor Boom Co.,* 44 Wash. 630, 87 Pac. 937, is in direct harmony with the views herein expressed.   In *State ex rel. Burrows v. Superior Court, ante,* p. 286, 93 Pac. 426, we, in certiorari proceedings, afterwards sustained the holding of the trial judge that an appropriation of the right to erect splash dams and

create artificial freshets past lands of a riparian owner was an appropriation of private property for public use. There is no doubt but that all the rights and powers for which appellant contends have been conferred on it by statute, subject, however, to the condition that in the exercise of such rights and powers it cannot damage or take any of the property of riparian owners. If it wishes to damage or take such riparian rights for the public use, it is entitled to do so under an exercise of the power of eminent domain, unless such rights have been devoted to a prior public use.

The judgment is affirmed.

HADLEY, C. J., MOUNT, and FULLERTON, JJ., concur.

DUNBAR and ROOT, JJ., took no part.