ROGERS *versus* KENNEBEC & PORTLAND RAIL ROAD COMPANY.

The compensation, provided by statute for damages occasioned by the location and construction of rail roads, extends only to real estate or materials taken.

For damages, indirectly resulting from the lawful acts of a chartered corporation, the law affords no remedy.

It is competent for the Legislature to authorize permanent erections across tide waters or any navigable waters, although the navigation may thereby be impaired.

The charter of the Kennebec and Portland Rail Road Company, with its additional enactments, authorizes the erection of bridges and causeways across navigable water, but requires them not to be built in such manner as to prevent the navigation of such water or to occasion unreasonable detentions thereon.

For the damage occasioned by so erecting the structures as to prevent such navigation or occasion such detention, the remedy is not by application to the county commissioners, but by action at law.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding.

CASE.

The route of the defendants' rail road crossed a small saltwater creek, in which the tide ebbed and flowed. Across the creek they placed an embankment of earth, having in it a culvert for the passage of water.

On the stream, three fourths of a mile below the embankment, were mills owned by the plaintiff, which had been driven for more than thirty years by the water of the stream, into which the creek emptied itself.

[Memo. — An Act passed in 1845, in addition to the Act incorporating the defendants, section 2, authorized the company to erect, for the sole and exclusive travel on their rail road, "a bridge or causeway," across any navigable rivers or streams or tide waters ; *Provided* said bridge or causeway shall be so constructed as not to obstruct or impede the navigation of said waters.

An Act was passed in 1844, to incorporate the *Bath and Portland* Rail Road Company. Its fifteenth section authorized the erection of bridges across any tide waters, navigable rivers or streams, provided that the same should be " so constructed

as not to prevent the navigating said waters, and said corporators shall be liable for all damages, sustained by individuals in consequence of unreasonable detention.

An Act of 1846, additional to the Act incorporating the *defendants'* company, gave to them " the same power to construct bridges and causeways across tide waters," and " with the same conditions and restrictions, as are granted to the Bath and Portland Rail Road Company by the fifteenth section of the Act incorporating said company."]

The plaintiff introduced evidence, tending to show that the culvert was badly constructed, and that the floor of it was not laid sufficiently deep, for which reason the water was detained by the embankment from coming, as it had been used to do, into the plaintiff's mill-pond; and his logs were unreasonably detained in the creek above the embankment, by the difficulty of getting them through the culvert.

To recover for these injuries, this action is brought.

The Judge directed a nonsuit, to which the plaintiff excepted.

*Gilbert,* for the plaintiff.

That the plaintiff has sustained serious damages by the embankment, is not controverted. It is one for which he is entitled to compensation. The question then is as to the form of the process to obtain that compensation.

It is not obtainable by any proceeding in the county commissioners' court. The claims coming within their juridiction, are limited to the owners of land or of building materials, taken by the corporation. But we have no complaint to make for land or any other property taken by them. The remedy, then, must be by action at law, and we are therefore *recti in curia.*

And here, at the outset, we admit, that if the Legislature have, by constitutional authority, granted to the defendants the right to do the acts, by which we have been injured, and to do them in the mode they have pursued, we have no case. But we do not seek redress for acts so done. Our claim is for acts *unauthorized,* and therefore *unlawful.* We contend, that the obstruction of the tide waters, boatable and floatable, was

unlawful, and that for the losses which the plaintiff suffered by such obstruction, he is entitled to recover.

1. We claim for injury sustained from the impediments to getting our logs down the creek from the place where we had deposited them before the embankment was made. In that creek we had a right of passage for lumber. It was subject to servitude for the public use, for boating, rafting and floating. *Brown* v. *Chadbourne*, 31 Maine, 9.

But that right was incumbered by the defendants' embankment.

The Legislature did not authorize such an obstruction. They gave no permission to cross tide waters, except upon bridges. The defendants therefore transcended their authority in erecting the causeway, the embankment.

2. We claim for a diminution of our water power. The erection by the defendants kept back a part of the water from our pond, as the evidence fully proved. To the full flow of that water we had a right.

If the creek is not to be viewed as a navigable stream, we had the right to the water by R. S. c. 126, § 1, giving the right to flow for mill purposes.

If it be a navigable stream, our right to it was perfected by prescription. The fact that it is a navigable stream does not prevent the acquisition of a right by long user. Our occupation for more than twenty years has ripened into a right to the full use of the water, a right which cannot be divested, even by the Legislature, without compensation.

But it has been said, in defence, that our dam, being upon navigable tide water, is in violation of public right, and that therefore, as against a third party, *we* could acquire no right. But such is not the law. If the maintenance of the dam is wrongful, the sovereign power only has a right to complain, except in cases of injury sustained by individuals. *Low* v. *Knowlton*, 26 Maine, 128; *Gerrish* v. *Union Wharf*, 26 Maine, 384; *Borden* v. *Vincent*, 24 Pick. 301; *Simpson* v. *Seavy*, 8 Greenl. 138.

But further, the broad ground is taken, in defence, that the

erection of the causeway was authorized by the additional Act of 1846. By a fair construction, however, that Act authorizes no erection but bridges over tide waters. The defendants have, nevertheless, placed a permanent embankment across the stream. It was that unlawful structure which occasioned so much injury to the plaintiff; and for that injury he here seeks redress.

*Evans*, for the defendants, referred to the statute provisions of 1844 and 1845, above recited, to educe from them an authority to erect the embankment, and then proceeded ; — " The plaintiff's mills and dam are upon a navigable stream of tide waters. Such a stream belongs to the · public, and is subject to the control of the sovereign power. *Berry* v. *Carle*, 3 Greenl. 269 ; *Spring* v. *Russell & al.* 7 Greenl. on p. 290 ; *Cutler* v. *Mill Dam Co.* 20 Maine, 356 ; *Low* v. *Knowlton*, 26 Maine, 128 ; *Brown* v. *Chadbourne*, 31 Maine, 9, where the cases are collected. — Also *Davidson* v. *Boston & Maine R. R.* 3 Cush. 105, which is directly in point. See clause 4, opinion of the Court, *Munson* v. *Hungerford*, 6 Barbour's S. C. R. 268, 269, and cases cited. See remarks of TANEY, C. J. in *Pennsylvania* v. *Wheeling Bridge*, 13 How. 582, as to the rules relating to navigable waters; *Charlestown* v. *Co. Commissioners of Middlesex*, 3 Met. 202.

It is not admitted that, in navigable tide waters, a prescriptive right can be acquired. *Nullum tempus occurrit regi.*.

The defendants, then, have done no more than they were authorized to do by their charter, and the additional enactments. For acts thus done by authority of law, no damages are recoverable. Damages so occasioned are *damnum absque injuria*. *Radcliff's Ex'rs* v. *The Mayor, &c. of Brooklyn*, 4 Comstock, 200 ; *Callender* v. *Marsh*, 1 Pick. 418.

If the plaintiff has sustained any damage, for which he *is* entitled to redress, he should have sought it by application to the County Commissioners, agreeably to the provisions of the statute. *Mason* v. *Ken. & P. R. R.* 31 Maine, 215 ; *Dodge* v. *Co. Commissioners of Essex*, 3 Met. 380.

SHEPLEY, C. J. — By their charter and by the general Act respecting rail roads, the defendants were authorized to take and hold land and other real estate and materials, that might be necessary for the construction and operation of their road, subject to certain restrictions ; and they were required to pay for the same. No provision was made by statute for compensation for an injury occasioned by a construction of the road to any person, from whom no land, estate or materials were taken. In this respect the provisions of our statutes differ from those of Massachusetts, as explained in the case of *Dodge* v. *County Commissioners*, 3 Metc. 380. No land, estate or materials owned by the plaintiff was taken ; and he cannot be entitled to the remedy provided by the statute in such cases.

For any lawful act done by the defendants, in the construction of their road, the plaintiff will not be entitled to recover damages, although he may have been indirectly injured. *Spring* v. *Russell*, 7 Greenl. 273 ; *Callender* v. *Marsh*, 1 Pick. 418 ; *Radcliff's Ex'rs* v. *the Mayor, &c. of Brooklyn*, 4 Comst. 200.

The Legislature might authorize the defendants to construct a causeway or bridge across navigable or tide waters, although the navigation might thereby be impaired or injured. *Parker* v. *The Cutler Mill-dam Co.* 20 Maine, 353 ; *Brown* v. *Chadbourne*, 31 Maine, 9.

The defendants will not, therefore, be liable for any damages suffered by the plaintiff, unless they have exceeded the authority conferred upon them and conducted unlawfully.

It is insisted, that across tide or navigable waters, they were authorized to erect bridges only, and not causeways.

The additional Act of July 16, 1846, provides, that the "company shall have the same power to construct bridges and causeways across tide waters," " and with the same conditions and restrictions as are granted" to the Bath and Portland R. R. Co. by the fifteenth section of the Act incorporating said company. The meaning of this must be, that the defendants should have the same power to construct bridges and causeways as said Bath and Portland R. R. Co, had by

their Act of incorporation to erect bridges. They might law-fully construct a causeway, and the bank raised for a passage-way over the stream may, perhaps, be properly denominated a causeway.

By the provisions of the fifteenth section of their Act of incorporation, the Bath and Portland R. R. Co. were not au-thorized to construct bridges so as to prevent " the navigating said waters." If, therefore, the defendants have so construct-ed a causeway over a navigable stream as to do this, they may be liable for damages in an action on the case. They might also, according to the language used in the same sec-tion, be " liable for all damages sustained by individuals in consequence of unreasonable detention."

If they have not prevented the navigation of the stream, but have so constructed their causeway or embankment as to occasion unnecessary and unreasonable detention, they may be liable for the damages thereby occasioned.

There is testimony, from which a jury might perhaps find, that the navigation of the stream had been prevented ; and that certain logs of the plaintiff had been unreasonably de-tained while floating down the stream.

> *Exceptions sustained ; nonsuit taken off,*
> *and case to stand for trial.*

Wells, Howard, Rice and Hathaway, J. J. concurred.