Gowen v. Penobscot Railroad Company.

AUGUSTUS GOWEN *versus* PENOBSCOT RAILROAD COMPANY.

No action can be maintained against a railroad corporation for injuries by acts done in conformity to law, unless the corporation have in some way forfeited their chartered rights or the charter remedy has been rightfully modified by some statute, so as to authorize such suit.

The legislature having limited its power over a corporation to the imposition of any other or further duties, liabilities or obligations than those contained in their charter, is not restricted in any enactment as to the mode, the time when, and the courts where they shall be enforced.

The facts in this case are agreed by the parties. The writ is dated March 1, 1856.

The action is TRESPASS against said Company, for damage to the plantiff's land, in locating their railroad over it.

The title of the plaintiff is admitted, and that he is entitled to damage, if duly and seasonably applied for.

The charter and due organization of the company are also admitted, and that the company had the right to take the land, conditionally. Said right of way was taken, and the road duly located, and the location filed in December, 1852, but the track has not been laid, nor any work actually done upon the plaintiff's land; neither have the company done any other act or exercised any other control or ownership of said land, than to locate their said road over it, and make due record thereof, and that otherwise than said location and filing of said location of said right of way, the plaintiff has continued in the undisturbed possession of his premises.

It is also admitted that the parties could not agree upon the amount of damage, the plaintiff always claiming more than the company would consent to allow, and that neither party have petitioned to have the damage assessed.

The defendants also plead, that all rights to damage are barred by limitation.

*J. A. Peters*, counsel for the plaintiff.

By the statutes of 1847, our remedy by a petition is gone by limitation. Also by R. S., ch. 81, s. 4.

Gowen *v.* Penobscot Railroad Company.

There being then no statute or charter remedy, the common law remedy of trespass revives. But it is expressly revived by a subsequent act. See Laws of 1853, ch. 41, s. 5.

The constitutionality of such a statute cannot now be doubted. It merely revives a remedy, and courts have gone the full length in not only reviving but absolutely creating them. *Colby* v. *Dennis*, 36 Maine R., 1.

It may be said that in this action of trespass, we can recover no damages till acts of occupation have been committed upon the land. To this we answer, that some damages, if but nominal, are recoverable.

But we claim more. Taking the context—the subject matter—the reason of the remedy, and we contend it is a mere renewal or continuance, in another form, of the substance of a remedy lost by limitation. That is, that this statute action of trespass is designed to have a plaintiff recover at once, in this suit, the value of the easement which the defendants took by their act of location, which the law names in this view an act of trespass. Otherwise, if one action must do, we may have to commence a great many more, as the defendants may be years upon our land, and that would be oppressive all around. Such a construction of the statute would perhaps require us to wait for compensation longer than would be just.

A construction such as the plaintiff contends for, would be practicable, and as a precedent, would let all parties easily ascertain and enjoy their rights respectively.

*Rowe* and *Wilson*, counsel for the defendants.

The question presented by the case is this, has the railroad company the right to use and occupy the plaintiff's land? On the decision of which depends the solution of this other question, shall the work go on, or be stopped?

A judgment for the plaintiff would be a perpetual bar to the defendants' entry on the land; for the time for taking, under the charter, is long passed.

If the act of 1853 operates here, the company, by force of

s. 5, have forfeited all right to the land, by failure to institute proceedings before the commissioners; have become trespassers or disseizors, at the election of the plaintiff, and the plaintiff has the right to have his damages, and, by s. 11, a perpetual injunction against the road, for the company having no right to the land, payment of damages cannot operate as a removal of an injunction.

The defendants were guilty of no illegal act in taking the land; by such taking, under their charter, they acquired an indefeasible right to use and occupy it, and thereby rendered themselves liable to pay to the plaintiff such sum as might be agreed upon, or in failure of the parties to agree, such sum as might be awarded on an application to the county commissioners, made within three years after the taking. That was the extent of their liability. Such a taking made, virtually, a contract between the parties.

The charter is a contract between the state and the defendants, that they should have the land on certain terms. The state cannot pass an act to impair the obligation of that contract, by changing the terms of payment, after the defendants have taken the land. It reserved no such right. Still less has it the right to declare the defendants' interest in the land forfeited, when they have always been ready to comply with those terms.

Under general railroad law we had a vested title, which a subsequent act cannot take from us.

The damages in this, and all similar cases, whether assessed by a jury or a court of equity, being awarded as satisfaction for a tort, and not as compensation for right of way, must be limited to actual damages prior to suit; in this case, to the treading down the grass, &c., by the surveying and locating party.

MAY, J. This is an action for trespass, alleged to have been committed by the defendants upon the plaintiff's land, in locating their railroad over it. The title of the plaintiff to the land, and that he is entitled to damages, if duly and

Gowen *v.* Penobscot Railroad Company.

seasonably applied for, are admitted. It is also admitted that said right of way was taken, and the road duly located, and the location filed in December, 1852; since which time the defendants have exercised no control or ownership over said land, and the plaintiff has continued in the undisturbed possession of his premises.

It is insisted in defence, that more than three years having elapsed, after the taking of the land by said location, and no application having been made to the county commissioners to ascertain and determine the damages, in accordance with the provisions of the defendants' charter, s. 1, the plaintiff is *without* remedy, and that this action is barred by the provisions of such charter.

The right of the defendants, under their charter, which was granted August 2, 1847, to locate said road, and take said lands, subject to and upon the conditions therein contained, is conceded. After granting the power to take the lands, estate and materials necessary for the location and construction of said road, it is provided by said charter, s. 1, " that said corporation shall pay for said lands, estate or materials so taken and used, such price as they and the owners thereof may mutually agree on, and in case said parties shall not otherwise agree, then said corporation shall pay such damages as shall be ascertained and determined by the county commissioners, for the county where such land or other property may be situated, in the same manner and under the same conditions and limitations as are by law provided in the case of damages by the laying out of highways ; and no application to said commissioners shall be sustained, unless made within three years from the time of taking such land or other property." The acts of the defendants having been done by authority of law, as found in their charter, which has prescribed a specific remedy for the damages sustained thereby, to which the authorities fully show the plaintiff must be confined, no action at law can be maintained for such injury, unless the defendants have in some way forfeited their chartered rights, according to the principles stated

in the case of *Cushman* v. *Smith*, 32 Maine R., 247; or unless the charter remedy has been rightfully so modified by some statute so as to authorize such suit.

It is contended on the part of the plaintiff, that the remedy prescribed by the charter has been so modified by the statute of 1853, ch. 41, s. 5. By this section it is provided that "no person who has suffered damages by the location of any railroad, and is entitled to compensation therefor, or who may hereafter suffer damages by any such location, and shall be entitled to such compensation, shall be barred of his claim, nor shall any rights whatever be acquired against him, if no proceedings shall have been or shall be instituted under the provisions of ch. 81 of the Revised Statutes, to ascertain and determine such damages within the time specified in the fourth section of said chapter, or as is hereinafter provided; but such person shall be entitled to his suit at law, as in case of trespass or disseizin." The facts argued in this case are within the express language of this statute. He had suffered nominal damages at least by the location of the defendants' road, and was entitled to compensation therefor; and the case finds that no proceedings have been had, to ascertain and determine his damages within the time specified in the R. S., ch. 81, s. 4, nor within the further time allowed in certain cases by the statute of 1853, s. 12. The time specified for the institution of such proceedings by the fourth section of said chapter 81, is found to be in exact conformity with the time specified in the defendants' charter, s. 1, before cited; and, by the third section of the same chapter, the same mode of estimating and ascertaining the damages for lands taken for the use of any railroad corporation, is provided as in said charter, and the conditions and limitations established by both are precisely the same. It is further provided by said charter, s. 1, "that said corporation shall have all the powers, privileges and immunities, and be subject to all the duties and liabilities provided and prescribed respecting railroads, in ch. 81 of the Revised Statutes, not inconsistent with the express provisions of this charter." It

therefore appears that the provisions of the charter and said chapter are identically the same upon the subject of damages, and that by these, both parties had the privilege of instituting proceedings within the time limited by ch. 81, s. 4, to ascertain and fix the damages which the plaintiff had sustained, by the taking of his land, but neither chose to exercise such privilege.

That it was competent for the legislative power to authorize the taking of the plaintiff's lands for railroad purposes, by providing such remedy for compensation, subsequently to be made, is settled in the case of *Cushman* v. *Smith*, before cited; and in the judgment of the court, all the provisions before referred to relate to such remedy.

While it was the intention of the legislature to make the rights which were vested in or acquired by the defendants irrevocable, by providing in their charter, s. 17, that it should "not be revoked, annulled, altered, limited or restrained, without the consent of the corporation, except by due process of law:" and while the legislative power was so limited as to prevent any subsequent imposition upon the defendants, "of any other or further duties, liabilities or obligations," we are fully satisfied that the legislature not only reserved the right, at all times, to inquire into the doings of the corporation, and the manner in which the privileges and franchises conferred may have been used and employed; but to pass any laws which might be deemed more effectual to secure the rights of the corporation on the one hand, or to compel a performance of their duties and liabilities on the other. The remedy for the security of their rights, and to compel a performance of their liabilities, *as to the mode, the time when, and the courts where they should be enforced,* was not in any way placed beyond legislative control, and these, we should suppose, should be alike in substance for all persons and corporations in the same circumstances.

When the defendants took the plaintiff's land, they were laid under a legal obligation to make suitable compensation therefor, and when the legislature authorized the taking, it

became their duty to prescribe some suitable remedy to compel the payment of such compensation; and if, in their judgment, the remedy adopted at the time was unsuitable and insufficient, they had the power in this case, as in most if not all others, to change it. The defendants, by such alteration, were not deprived of the right or the power to have the damages determined in this case in the mode first provided.

By the statute of 1853, before cited, the legislature have thought proper, in cases where neither party have resorted to the particular remedy provided at the time of the charter for a performance of the obligation to make compensation, to allow the owner of the land, which had been taken, a further time and a different mode in which to compel such performance. The motive for such enactment may be the hope that a subsequent liability to an action at law, would be likely to induce such corporations to a more speedy and certain performance of their constitutional obligations, by resorting to the mode provided, before the time of limitation should expire. This statute does not in any manner touch any of the vested legal rights, or add to the legal obligations and liabilities of the defendants, and therefore is not in conflict with any of the provisions of their charter. The defendants are to be defaulted, but as the parties have agreed to submit the question as to the amount of damages, to an intelligent referee, we refrain from making any intimations on that subject.

*Defendants defaulted.*