[No. 7749. Decided August 26, 1909.]

## J. P. O. LOWNSDALE et al., Appellants, v. GRAYS HARBOR BOOM COMPANY, Respondent.[1]

NAVIGABLE WATERS—NAVIGABILITY—PLEADINGS—ISSUES AND PROOF. Where the complaint alleges, and the answer admits, that a slough is navigable, it is not error to exclude evidence to show that it was navigable only for floating logs and not in a "commercial sense," as there was no issue as to the navigability.

EVIDENCE—JUDICIAL NOTICE—RECORD IN ANOTHER CAUSE. The court cannot take judicial notice of the record in another cause, even between the same parties in the same court, when not pleaded or proved.

APPEAL—REVIEW—EVIDENCE—JUDICIAL NOTICE. The appellate court will judicially notice only the matters that the trial court is obliged to notice.

EJECTMENT—DAMAGES—INCIDENTAL TORTS—PLEADING. In an action by an upland owner against a boom company to recover possession of the land and the rents, issues, and profits during the detention, the plaintiffs are not entitled to damages for cutting off their ingress and egress from the water, or incidental tortious acts, especially where the acts causing such damage are not pleaded.

NAVIGABLE WATERS—LAND UNDER WATER—TITLE—LOGS—BOOM COMPANIES—RIGHTS CONVEYED. As the state reserved the title in fee to the beds and shores of navigable waters, up to the line of mean high tide, a conveyance of the same by the state to a boom company for booming purposes, grants the exclusive use thereof, except a free passageway between the boom and one of its shores for water craft "for the ordinary purposes of navigation."

SAME—RIGHTS OF UPLAND OWNER. In ejectment for upland bordering on a navigable stream, the plaintiff cannot recover damages for the use of land below mean high tide.

[1]Reported in 103 Pac. 833.

SAME—BANKS AS RETAINING WALL FOR BOOM. Where the banks of a navigable stream are perpendicular and mark the line of ordinary high tide, the upland owner cannot recover from a boom company owning the tide lands for the use of the bank as one of the retaining walls of its boom.

NAVIGABLE WATERS—TIDE LANDS—RIPARIAN RIGHTS. An upland owner on navigable waters has no riparian rights where, in order to reach his lands from navigable waters, he must cross over the tide or shore lands of another which the state has sold.

EJECTMENT—DAMAGES—INJURY TO LAND. Where injury was done by converting plaintiffs' land into a channel of a river, it is immaterial, as far as concerns the damages recoverable in ejectment, whether the channel was navigable or not.

EJECTMENT—DAMAGES—USE OF LANDS. In ejectment against a boom company for uplands and shore lands along navigable waters, the value of the lands as a boom site cannot be considered in determining the damages for detention.

Appeal from a judgment of the superior court for Chehalis county, Morris, J., entered May 21, 1908, upon the verdict of a jury rendered in favor of the defendant, in an action of ejectment. Affirmed.

*J. C. Cross* (*A. Emerson Cross*, of counsel), for appellants.
*J. B. Bridges* and *Ben Sheeks*, for respondent.

FULLERTON, J.—This is an action brought by the appellants to recover from the respondent possession of certain real property, and the rental value of the same while they were deprived of its use by the acts of the respondent. In their complaint the appellants allege that they are the owners, by purchase from the state of Washington, of the southeast quarter of section sixteen, in township eighteen, north, of range eleven, west, of the Willamette Meridian, together with the banks of the Humptulips river within the boundaries of such lands, and the shore lands, shore lines and shore rights thereunto belonging, also all of the riparian rights and privileges along and upon the Humptulips river, and the sloughs thereof, within the boundaries of the above described lands; that the Humptulips river is a meandered

stream in which the tide ebbs and flows, and is for many miles navigable; that it passes through the appellants' land, entering at the northeast corner thereof and flowing south into Grays Harbor at a point near the center of the south line of such land; that there is a large, unmeandered, navigable slough connected with the river, and so situated that the river and slough together are valuable for the purposes of booming, rafting, holding, storing and sorting logs which may be floated down the Humptulips river; that there are millions of feet of merchantable standing timber tributary to the Humptulips river which must be brought to market by floating the same down such river, which is the natural and only outlet to market for such timber; that the appellants' land is so situated naturally as to make the river and slough in front thereof especially valuable for storing, rafting, sorting and booming logs, and the use of these lands, together with the shore lands and shore rights for that purpose, are valuable; that the appellants have certain improvements along the banks of the river and slough, consisting of houses, piles and other structures upon and within the lands and the shore lines and shore rights connected therewith; that on and prior to November 15, 1902, the respondent, without right or authority, unlawfully and wrongfully took possession of portions of the premises described, adjoining and abutting upon the river and slough, together with the banks, shore lands, shore lines and shore rights contiguous to and belonging to the lands of the appellants, and appropriated the same to their exclusive use and benefit; that they have also established a boom in the river for the purpose of catching, storing, assorting, and rafting logs, and do now and have used the river above and below the line of mean high tide, within appellants' premises, for the purpose of booming logs, to the exclusion of the appellants therefrom, and constantly keep vast quantities of logs therein to the exclusion of the appellants; that the use of such premises during the time the appellants have

been excluded therefrom is reasonably worth the sum of
$15,727.50. They prayed a restitution of the premises, and
a judgment for their rental value in the sum above named.

The respondent answered, admitting the appellants'
ownership of the quarter section of land described in the
complaint, and that the river and slough were tidal streams
and were navigable in fact, save and except that portion ly-
ing above mean high tide, but denied all the other allega-
tions of the complaint. For a further and separate answer,
it set up its incorporation under the laws of the state of
Washington relating to boom companies, and alleged that,
pursuant to its charter, more than ten years prior to the
commencement of the appellants' action, it entered into the
mouth of the Humptulips river and constructed and main-
tained therein certain boom works, doing the same in the
manner and way provided by law, and that since that time
it has continued to maintain, and does now maintain, such
boom works therein as are permitted by law. That more
than four years prior to the beginning of this action it pur-
chased from the state of Washington all of the tide lands
along the river where it runs through the land of the ap-
pellant, and is now the owner and holder thereof. For a
second affirmative defense it set up the statute of limitations.

A reply was filed admitting the construction of the boom
works in the river, but denying that the same were legally
constructed or that the same were operated in accordance
with the statute, and again alleged that the same was con-
structed in part upon the premises of the appellants.

There was a trial before a jury, in which evidence was in-
troduced which tended to show that the appellants were the
owners of the uplands only; that the Humptulips river was
a meandered stream in which the tide ebbs and flows; that
all of the tide or shore lands on each side of the stream for
its full distance through the appellants' premises had been
sold by the state to the respondent, and that they were the
owners and in possession thereof; that the slough had its

mouth in the river near the appellants' south line, and extended from thence northwesterly to a point near the west line of appellants' premises, and from thence north to the appellants' south line, from whence it extended in a northeasterly direction nearly if not quite to the south line of section sixteen; that such slough was navigable for the purposes of floating logs, but useful for that purpose only as it was used in connection with the river, and then as a storage basin for logs. It did not appear that either of the parties had acquired the shore lands bordering on this slough.

There was evidence tending to show that the respondent was incorporated as a boom company under the laws of this state and exercising its privileges as such; that all of the respondent's boom works in the river, which the appellants sought to have removed, were constructed on tide lands below the line of mean high tide; that the logs stored in the river and slough, which the appellants alleged were stored upon their property, were stored in the river and slough below the line of mean high tide; that occasionally in extreme tides certain of the logs stored in the slough would float to the high land and lodge there until they were returned by physical force, but other than this there was no occupancy of the appellants' upland. The jury returned a verdict for the respondent, and from the judgment entered thereon, this appeal is taken.

The appellants assign for reversal the following errors: (1) Errors of the court in its rejection of evidence, and its withdrawal of evidence; (2) error of the court in giving instructions; (3) errors of the court in its refusal to give instructions requested by appellants; and (4) errors of the court in denying appellants' motion for a new trial and in dismissing the action.

Discussing their several assignments, the appellants first argue that the court erred in refusing to permit the appellants to introduce 'evidence tending to show that the slough mentioned and described in the pleadings, while navigable

for floating timber, was not navigable in a "commercial sense," and hence not subject to the uses which the respond-ent was making of it.    To this objection it is a sufficient answer to say that the appellants in their complaint alleged the slough to be "a large, unmeandered navigable slough," and that this fact was admitted in the answer. There was, therefore, no issue on the question of its navigability, or the purposes for which it was navigable, and it was not error for that reason to refuse to admit the evidence offered.

To sustain their contention that the slough is not navigable in a commercial sense, and that the court should have so ruled in the absence of proofs, the appellants have set out in their brief at length the findings and judgment in another action between the parties in which it appears to have been adjudged that the appellants had rights in the slough, by reason of their upland holdings, not possessed by the public at large, or by the respondent in this action. But the findings and decree were not before the trial court and are not before us.    They were neither set out in the pleadings nor given in evidence, and the court cannot take judicial notice of their existence.    That a trial court will not judicially notice the record in another cause, even though it be between the same parties and in the same court, was held by us in *Bartelt v. Seehorn,* 25 Wash. 261, 65 Pac. 185, and *Plumley v. Simpson,* 31 Wash. 147, 71 Pac. 710.    Such also is the general rule.    *Downing v. Howlett,* 6 Colo. App. 291, 40 Pac. 505; *Daniel v. Bellamy,* 91 N. C. 78; *Enix v. Miller,* 54 Iowa 551, 6 N. W. 722; *Anderson v. Cecil,* 86 Md. 490, 38 Atl. 1074; *Gibson v. Buckner,* 65 Ark. 84, 44 S. W. 1034; *Ralphs v. Hensler,* 97 Cal. 296, 32 Pac. 243; *Bank of Montreal v. Taylor,* 86 Ill. App. 388; *Allison v. Fidelity Mut. Fire Ins. Co.,* 74 Neb. 366, 104 N. W. 753; *Simon v. Durham,* 10 Ore. 52.    "The record in each particular case must be complete in itself and exhibit the ground upon which the final decision is based."    *In re Ollschlager's Estate,* 50

Ore. 55, 89 Pac. 1049. It is of course needless to add that the appellate court notices judicially only those matters that the court of original jurisdiction is obligated to notice. It follows, therefore, that there was no error in either of the rulings here complained of.

The next objection is that the court erred in refusing to admit evidence tending to show that the respondent had so blocked up the river with logs as to cut off the right of the appellants to ingress and egress from the river to their land. It is a sufficient answer to this objection also to say that it is not an issue in the case. As before stated, the appellants' action is one to recover possession of real property which is alleged to belong to the appellants and of which the respondent is wrongfully in possession, and to recover the rents, issues and profits thereof during the time it has been detained by the respondent. Incidental tortious acts causing damage are not admissible in evidence in such an action, especially where no such tort or damages by reason thereof is made an issue by the pleadings. So, also, as to the ruling refusing to admit evidence tending to show that the logs in the river and slough tended to cause the appellants' land to overflow. This was a tort for which an action would lie, but it cannot be recovered for in an action to recover the possession of real property and damages for the detention thereof.

The appellants next complain that the court, on motion of the respondent, withdrew from the consideration of the jury all of their evidence tending to show that the respondent had made use of the banks of the stream as a retaining wall in the operation of its boom. Our examination of the record, however, convinces us that the ruling complained of was not as broad as the objection indicates. The court did rule that the appellants could not recover for use or occupation of the beds of the river and slough below the line of mean high tide. This ruling must unquestionably be correct. The boundary line of the holdings of an upland owner bordering on tide or shore lands is the line of mean

high tide, or mean high water; he owns no portion of the bed of the stream below such line.   The title to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes, was reserved in the state by § 1 of art. 17 of the constitution.   This was a reservation of a title in fee, carrying with it all of the attributes of such a title.   When, therefore, the state conveys tide or shore lands to an individual it vests in him title free and clear of all rights save such as may be reserved in the grant, and, of course, title in fee passes to the grantor when the instrument of conveyance contains no reservation.   In the case at bar, the state granted by deed in fee to the respondent all of the tide lands along each side of the river through the appellants' premises, and to it, by virtue of its compliance with the laws relating to boom companies, the right to the exclusive use of the beds and shores of the river and slough covered by its plat, until such time as its right ceases by operation of law; excepting, of course, a free passageway between the boom and one of the shores sufficient for the passage of "boats, vessels or steam craft of any kind whatsoever, or for ordinary purposes of navigation."   There can be, therefore, no right in the appellants to recover for the use of any part of the premises occupied by the respondent which lie below the line of ordinary high tide.

It appears, however, that for a part of the way along the river the banks were perpendicular, or practically so, and that this bank was used as a retaining wall when the water was above as well as below the line of ordinary high tide. This was claimed by the appellants to be a use of their property for which they were entitled to recover, and that the court denied them that right.   But if the ruling of the court complained of denied them the right, we find no error in the ruling.   The perpendicular bank marked the line of

the appellants' rights as well as that of the respondent. The boundary line between the two grants is a perpendicular plane, and neither party has the right to complain of the encroachment of the other so long as the plane is not crossed, and there can be no crossing when the bank is one side of the plane.

The contentions made under the second assignment are met in the main by what is said with reference to the objections to the admission and exclusion of evidence. The court charged the jury to the effect that the appellants could recover for any use and occupation of their uplands made by the respondent, and could recover possession of the land so occupied, but denied them the right to recover for any use or occupation below the line of mean high tide. These instructions were, as we say, correct on the theory that the appellants were without right in the property in these streams below the line of mean high tide. Certain specific objections, however, remain to be noticed. In its instruction numbered four the court instructed the jury to the effect that a boom company had the right to construct, in the water of the state selected by it, a boom and sheer boom and such other works as may be necessary to carry out the purposes for which it is incorporated, and that an upland owner as such could not recover from it, in an action to recover the possession of real property and damages for its detention, for any abuse of its power such as failing to leave a way open to those who had a right to navigate the stream. The appellants object to this because, as they contend, it allows an interference with their riparian rights. But an upland owner as such has no riparian rights in a river, lake or bay to reach which he must cross the tide or shore lands of another. To hold to the contrary would be to hold that the state did not have title in fee to its tide and shore lands, and that its deed to an individual did not pass to that individual title in fee to the property conveyed, and that all the vast body of shore and tide lands bordering on the waters of the

state, which the state has sold and which is now in the exclusive possession of the individual purchasers, is subject to common law riparian rights of the owners of the upland bordering on such waters. Among these rights would be the free and uninterrupted right to pass over the same at any place and at all times from the upland to navigable water in its front, and from the navigable water to the upland. This, it is plain, would be to make public and practically destroy property of untold value that has been, up to this time, supposed to be susceptible of private ownership; in fact such a rule would open to the commons all of the immense bodies of tide and shore lands which the state has conveyed to individuals and which is now held as private property.

There are cases in this court which seemingly support the appellants' contention, notably those in which one or the other of the parties to the present action have brought to this court, but these cases must be regarded as incorrectly stating the principle involved rather than as authority. The rule we now conceive to be the correct rule was announced in the early case of *Eisenbach v. Hatfield,* 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632, and has been repeatedly affirmed since that time. See, *Brace & Hergert Mill Co. v. State,* 49 Wash. 326, 95 Pac. 278, and *Grays Harbor Boom Co. v. Lownsdale, ante* p. 83, 102 Pac. 1041, where the cases will be found collected. It follows from the fact that an upland owner has no riparian rights in tidal waters that the appellants are without riparian rights in these waters, and the court correctly so ruled.

In its fifth instruction the court stated to the jury concerning a channel in the river, known in the record as channel B, that if the course over which it passed had been originally land as distinguished from water, and by some act of the respondent it had been made a channel of the river and thereby the appellants had been deprived of its use, it would be a use and occupancy on the part of the respondent entitling the appellants to recover, and conversely, if they

found the opposite of this, no recovery could be had therefor. It is said of this instruction that it failed to recognize the rights of the parties as fixed by the judgment of the court in the injunction case before mentioned, and failed to distinguish between streams navigable for floatage purposes only, and one navigable in a commercial sense. But, as we have shown, the court could not know what ruling had been made in the other case, since it was neither pleaded nor proven. As to the second objection, it could make no difference, so far as appellants' rights were concerned in this action, whether the channel was large or small, other than its size might affect the amount of the recovery. If the respondent caused the channel to open and thereby deprived the appellants of the use of so much of their land, it was liable to the same extent whether the channel was called navigable for floatage purposes or navigable in a commercial sense. If such a distinction exists there was, therefore, no necessity of noticing it in this part of the charge.

The sixth instruction is objected to because the court, in determining the amount of the appellants' recovery, told them they should not consider the value of the land considered as a boom site. This was correct on the authority of the case of *Grays Harbor Boom Co. v. Lownsdale, supra.*

The objections to the eighth, ninth, and tenth instructions require no special consideration. From the view of the law taken by the trial judge, and which we have adopted as the correct view, they are unobjectionable; the exception and argument thereon being based on the contrary legal view.

The third and fourth assignments likewise require no special consideration. The instructions requested, in so far as they differ from those given by the court, embody the theory of the law of the case maintained by the appellants, and since we hold that theory incorrect, we must hold the requested instructions inapplicable. The motion for a new trial is based on the record, no new matter being presented therein, and the argument made in support of it is met by

what we have said concerning the alleged errors in the admission and exclusion of evidence, and the objections to the instructions.

The judgment is affirmed.

CHADWICK and MOUNT, JJ., concur.

GOSE, J. (concurring)—I concur on the authority of *Grays Harbor Boom Co. v. Lownsdale, ante* p. 83, 102 Pac. 1041.

CROW, J., concurs with GOSE, J.

DUNBAR, PARKER, and MORRIS, JJ., took no part.