[No. 8599. *En Banc.* December 12, 1910.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. SLADE LUMBER COMPANY, *Respondent.*[1]

EMINENT DOMAIN—PRIVATE PROPERTY — TIDE LANDS — DAMAGE — NAVIGABLE WATERS—BRIDGES. Uplands and the abutting tide lands to deep water, purchased from the state, there being no intervening harbor area, is private property which cannot be taken or damaged without compensation by the operation of a railroad draw bridge across navigable water authorized by Federal and state authority; and the obstruction of a wharf on such premises by the operation of the draw is not damage *absque injuria*, and may be enjoined (RUDKIN, C. J., and GOSE, J., dissenting).

[1]Reported in 112 Pac. 240.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered September 18, 1909, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action for an injunction. Affirmed.

*George T. Reid, J. W. Quick,* and *John C. Hogan,* for appellant.

*Bridges & Bruener,* for respondent.

Crow, J.—This action was commenced by the Northern Pacific Railway Company against S. E. Slade Lumber Company, to enjoin the defendant from interfering with the opening and closing of a drawbridge. From an order of dismissal, the plaintiff has appealed.

The material facts are undisputed. The Wishkah river, tributary to Grays Harbor and subject to tidal flow, is navigable for sea-going vessels to and above the city of Aberdeen. The appellant corporation, a common carrier, engaged in interstate commerce, owns and operates a line of railroad extending from Grays Harbor to Centralia and Tacoma, where it makes connections extending through Washington and other states. Shortly after October, 1897, under a permit from the secretary of war, appellant constructed a drawbridge across the river in the city of Aberdeen, and maintained and used the same until January, 1908. On April 20, 1907, the secretary of war issued to appellant a permit for the erection of a permanent steel bridge, and permission to place a temporary wooden bridge on the stream for use during its construction, which was commenced in January, 1908. The swinging arms of the temporary bridge and the new steel bridge are each thirty-one feet and ten inches longer than the arm of the old bridge. Respondent lumber company owns certain upland, and tract 13 of Aberdeen tide land immediately in front thereof, on the bank of the river. Its tide land extends from its upland to the deep waterway, and both tracts lie immediately north of appellant's railroad.

Respondent and its predecessors were owners of the upland for many years prior to July 10, 1907, when it procured from the state title to the tide land by exercising its preference right to purchase immediately after a plat of the Aberdeen tide lands had been filed in the office of the state land commissioner. On the east side of the river immediately north of and contiguous to appellant's railroad, respondent built a wharf, partly upon its upland and partly upon its tide land. The outer or west line of this wharf is identical with the inner or east line of deep water, there being no established harbor area. For many years respondent has owned and operated a sawmill on its upland, and has used its wharf for loading and unloading sea-going vessels. By reason of the length of the arms of the temporary wooden bridge and the steel bridge, appellant could not open or close the same while a vessel was lying in the stream alongside of respondent's wharf, immediately north of and contiguous to the railroad, although the shorter arm of the old bridge could always be opened and closed at such times. Prior to the commencement of this action, the respondent frequently placed and permitted vessels to remain, for loading and unloading at its wharf, immediately north of appellant's right of way, thereby preventing appellant's opening and closing its bridge and moving its trains. Appellant thereupon commenced this action to restrain the respondent from thus interfering with its bridge and trains. A temporary restraining order was granted, and the steel bridge was completed. On final trial a permanent injunction was denied, the action was dismissed, but the trial court permitted the appellant to file a supersedeas bond and continue the temporary restraining order during the pendency of this appeal.

The sole question before us is whether the appellant, having constructed its bridge under the authority of Rem. & Bal. Code, § 8670, and the permit of the secretary of war, is entitled to interfere with respondent's use of its wharf, without compensating it for resulting damages. Appellant;

citing *Eisenbach v. Hatfield*, 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632; *Board of Harbor Line Com'rs. v. State ex rel. Yesler*, 2 Wash. 530, 27 Pac. 550; *Muir v. Johnson*, 49 Wash. 66, 94 Pac. 899; *Brace & Hergert Mill Co. v. State*, 49 Wash. 326, 95 Pac. 278; *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 102 Pac. 1041, 104 Pac. 267; *Lownsdale v. Grays Harbor Boom Co.*, 54 Wash. 542, 103 Pac. 833, and other cases from this court, contends that, if the state be the absolute owner and proprietor of the beds and shores of all its navigable waters, subject only to the right of Congress to regulate interstate commerce, no owner of any bordering land can have a right of access to deep water; that the respondent having no such right is not entitled to recover damages for appellant's obstruction of the stream, under the authority of the state and the war department, and that any such impairment of respondent's access to its wharf over the stream is *damnum absque injuria*.

Under the conceded facts, we think this contention cannot be sustained. Respondent owns and holds not only the absolute fee simple title to the upland, but also a fee simple title to the tide land, formerly owned by the state, upon which the wharf is now constructed. The outer line of the tide land and wharf, its private property, is coincident with the inner line of the waterway, and there is no harbor area. Its wharf therefore abuts upon deep water, and is accessible to sea-going vessels. Although the state established and platted the tide lands, it refused to establish any harbor area. Having thus established and platted tide lands which extend to and border upon the waterway, it has sold to respondent every right it held in and to such lands, and now holds no right to any intervening harbor area. By virtue of the improvement and location of the tide land and respondent's ownership thereof, it (the respondent) has acquired a right of access to its wharf over the navigable waters, which interferes with no intervening right of the state. The cases cited by appellant are not pertinent. In the *Eisenbach* case, which the others

follow, it was held that an upland owner had no right of access to navigable waters, for the reason that the tide land or shore land lying between such upland and the deep water belonged to the state, that the recognition of any such right of access in the upland owner would impair the state's title and interfere with its absolute ownership over, and control of, its tide or shore lands. In this action respondent has acquired the tide land which extends to the deep waterway, and owns the same in fee simple. There is no intervening land or harbor area between it and deep water. In the absence of facts and conditions upon which the *Eisenbach* case was predicated, its doctrine ceases to be applicable, and on the facts now before us, respondent should be held to have a right of access to its wharf located on its own land and contiguous to the deep water, and that the same is a valuable property right. In *Muir v. Johnson, supra,* we said:

"As early as the case of *Eisenbach v. Hatfield,* 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632, this court held that the owner of uplands bordering on navigable waters as such had no riparian or littoral rights in such waters as would enable him to maintain an injunction from interference therewith. This holding was based on the ground that between the boundary of the upland and the navigable waters proper there were shore lands which belonged to the state and to which all riparian and littoral rights attached, and the state, or its grantee after it conveyed the lands, had the sole right to complain of obstructions placed between the lands and the navigable waters of the river, lake or other body of water upon which they bordered."

If the grantee of the state has the right to complain of such obstructions, it is apparent that the respondent, being such a grantee, has the right to complain in this action. If appellant can, under permission granted by the secretary of war, so extend the arm of its bridge as to interfere, without compensation, with respondent's access to a portion of its wharf, there is no logical reason why it may not in like manner completely destroy all access to the wharf and insist that the

injuries resulting to the respondent are *damnum absque injuria*. It is our view that no case heretofore decided by this court contemplates or warrants any such holding. As no tide land, harbor area, or other property of the state intervenes or lies between the respondent's wharf and the deep waterway, we hold the respondent has a special property right of access to the wharf which cannot be taken, damaged, or destroyed without compensation.

The judgment is affirmed.

DUNBAR, PARKER, MOUNT, MORRIS, CHADWICK, and FULLERTON, JJ., concur.

RUDKIN, C. J. (dissenting)—The majority opinion holds that a drawbridge, constructed over a public navigable stream of the state and of the United States, by authority of both the state and the United States, cannot be operated or maintained without the consent of the owner of private property abutting on the stream. This is contrary to my conception of the law, and I find nothing in the majority opinion to change my views or convince me of my error. I have always supposed that a sovereign state had absolute control and dominion over the public navigable waters within its borders, and that the individual, as against the sovereign, had neither property nor property rights therein. Such was the conclusion of the supreme judicial court of Maine in *Frost v. Washington County R. Co.*, 96 Maine 76, 51 Atl. 806, 59 L. R. A. 68, after a full review of the authorities, and in that conclusion I fully concur. The court there said:

"The plaintiff further contends that even if the trestle in its present condition is a lawful structure, and is lawfully maintained by the defendant company, he has nevertheless suffered much pecuniary loss from the action of the defendant company in building and maintaining it, and should be reimbursed therefor by the company. He concedes that the company has not taken, nor even touched, any of his tangible property, real or personal. The trestle is three-fourths of a mile distant from the property described in this suit. But the

closing of the channel by the trestle has undoubtedly reduced the earning powers and selling value of his property on the cove, and has lessened the profits of the business he was carrying on there. He claims he has a cause of action against the railroad company for the injury thus done to his property and business.

"This claim cannot be sustained. The only right of the plaintiff interfered with by the defendant company was his right of navigation by water in and out of the cove through the channel. This right of the plaintiff, however, was not his private property, nor even his private right. It could not be bought, sold, leased, or inherited. He did not earn it, create it, or acquire it. He did not own it against the sovereign. The right was the right of the public, the title and control being in the sovereign in trust for the public and for the benefit of the general public, and not for any particular individual. The plaintiff only shared in the public right. He had no right against the public. The sovereign had the absolute control of it, and could regulate, enlarge, limit, or even destroy it, as he might deem best for the whole public; and this without making or providing for any compensation to such individuals as might be inconvenienced or damaged thereby. The sovereign cannot take private property for public uses without providing for just compensation to its owner, but this constitutional provision does not limit the power of the sovereign over public rights. If, in the evolution of life and commerce, the sovereign comes to believe that the public good will be increased by the creation of some new or additional means of communication and commerce at the expense, or even sacrifice, of some older one enjoyed merely as a public right, the sovereign can so ordain even to the detriment of individuals. If, in the judgment of the sovereign, a railroad across a navigable channel of water and completely obstructing its navigation is of more benefit to the public than the navigation of the channel, he has the unrestricted power to thus close the channel to navigation, without making compensation to those who had been wont to use it. Every individual making use of a merely public privilege must bear in mind that he may be lawfully deprived of that privilege whenever the sovereign deems it necessary for the public good, and he must order his business accordingly. Unless the person authorized by statute to obstruct or close a navigable channel is required by the statute to make compen-

sation to persons injured by such action, he is under no legal obligation to do so. In such case the inconvenience and loss, however great, are *damnum absque injuria.* The company has damaged the plaintiff, but it has not wronged him. The defendant company has not interfered with the private property nor private rights of the plaintiff. It has lawfully, by express authority from the sovereign, merely abridged the use of a public right which was within the exclusive control of the sovereign. For this lawful act it is not obliged to make any compensation to the plaintiff, any more than to all other persons who might have occasion, however seldom, to navigate the channel.

"The authorities which support the foregoing statement of the law are numerous and uncontradicted. We cite a few only: *Spring v. Russell,* 7 Maine 273; *Rogers v. K. & P. R. Co.,* 35 Maine 319; *Gowen v. Pen. R. R. Co.,* 44 Maine 140; *Brooks v. Cedar Brook, etc.,* 82 Maine 17, 19 Atl. 87, 17 Am. St. 459, 7 L. R. A. 460; *Miller v. Mayor of New York,* 109 U. S. 385; *Gilman v. Philadelphia,* 3 Wall. 713; *Pound v. Turck,* 95 U. S. 459; *Hamilton v. Vicksburg R. R. Co.,* 119 U. S. 280; *Escanaba Co. v. Chicago,* 107 U. S. 678; *Cardwell v. Am. Bridge Co.,* 113 U. S. 205; *Scranton v. Wheeler,* 179 U. S. 141.

"It follows that the plaintiff has no legal claim to compensation, and cannot sustain the action. We regret that the plaintiff has been damaged by this new railroad being lawfully built across the channel he was wont to use, but he is only one of many thousands who are being individually damaged every day by the frequent lawful changes in the means and methods of manufacture and commerce, and yet cannot be said to be wronged by illegal acts."

The judgment of the court below should be reversed, with directions to grant a permanent injunction as prayed.

Gose, J.—I concur in the view expressed by the chief justice.