## PRICE FIRE & WATER PROOFING COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 257. Argued January 22, 1923.—Decided February 19, 1923.

Expenses incurred by a manufacturer after termination of its work for the Government during the war and after November 12, 1918, in efforts to keep alive its organization and regain its commercial business, are not recoverable from the United States under the Dent Act, March 2, 1919, c. 94, 40 Stat. 1272. P. 183.

56 Ct. Clms. 502, affirmed.

APPEAL from a judgment of the Court of Claims in an action to recover, under the Dent Act, the amount of various expenditures and liabilities incurred by the claimant in connection with or growing out of work done for the Government.

*Mr. S. S. Ashbaugh* for appellant.

The plaintiff did not "sustain or receive in common with the community generally" these expenses; nor did the depression of the market because of the sale of government goods "at prices below cost of production" occur until many months after these expenses began, and until large parts of them had been incurred. They are peculiar to the plaintiff, and are connected directly with its ownership, use, and enjoyment of its own particular property and business, which in itself gives a basis for a further judgment for the $125,000.00. It is brought within the rule of *United States* v. *Russell*, 13 Wall. 623, where the Government was held liable for the "services rendered and the expenses incurred." It is also within the rule stated in *Henry* v. *Dubuque & Pacific R. R. Co.*, 2 Iowa, 300, that "just compensation should be precisely commensurate with the injury sustained by having the prop-

erty taken; neither more nor less." *Holton* v. *Milwaukee*, 31 Wis. 27.

The difference between the doctrine of government liability for private property taken for public use, and the doctrine of *damnun absque injuria,* is clear and distinct. The one doctrine is within the rule of the *Russell Case* and the other within the rule of the Soda Lake cases recently affirmed by this Court (*Horstmann Co.* v. *United States,* 257 U. S. 138) where a loss was inflicted but no taking of property was proved or found. The rights of the plaintiff have been fixed by these decisions of the several courts. See *Railroad Commission of Wisconsin* v. *Chicago, Burlington & Quincy R. R. Co.,* 257 U. S. 563.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

By the Dent Act (March 2, 1919, c. 94, 40 Stat. 1272) the Secretary of War was authorized to adjust and discharge, upon a fair and equitable basis, agreements, express or implied, made prior to November 12, 1918, in connection with the prosecution of the war, " when such agreement has been performed in whole or in part, or expenditures have been made or obligations incurred upon the faith of the same by any such person, firm, or corporation prior to November twelfth, nineteen hundred and eighteen, and such agreement has not been executed in the manner prescribed by law." If an adjustment offered by the Secretary was refused by the claimant, the Court of Claims was given jurisdiction to award fair and just compensation. But it was expressly provided that neither the Secretary, nor the court, should include in the award " prospective or possible profits on any part of the con-

tract beyond the goods and supplies delivered to and accepted by the United States, and a reasonable remuneration for expenditures and obligations or liabilities necessarily incurred in performing or preparing to perform" the contract.

The claimant herein owned an establishment for fireproofing and waterproofing cloth. In 1917, an arrangement was made by which, after January 1, 1918, the plant, with increased facilities, was to be operated, by the claimant, wholly on cloth to be delivered to it, from time to time, by the Government. Payment was to be made at an agreed rate per yard. No agreement was executed in the manner provided by law. Thereafter many orders for finishing goods were given. There were serious delays and irregularities on the part of the Government both in delivering the goods for finishing and in removing them from the premises after the work had been done; and upon the signing of the Armistice, all unfinished orders were cancelled. For all goods finished the claimant was paid, at the agreed price. But by the action of the Government prior to November 12, 1918, and by its cancellation of the orders, it was subjected to large and unanticipated expenses. A claim for these expenses and the losses incurred was duly presented to the Secretary of War. An adjustment offered by him was rejected; and thereupon claimant brought this suit in the Court of Claims for $641,313.64. The petition set forth ten distinct causes of action. On nine of these the court made the allowances set forth in the margin,[1] which aggregate $47,700.08; and judgment was entered below for this

---

[1](1) Storage and hauling charges on untreated gray goods: On this cause of action the Court of Claims awarded the plaintiff the sum of................ $2,147.05

(2) Storage charges on treated goods after notice of completion: On this cause of action the Court of Claims awarded the plaintiff the sum of......... 544.60

amount. The tenth cause of action, on which $590,000 was claimed, was for loss to commercial business. On this no allowance was made. A motion for a new trial asked for by claimant (on what ground does not appear) was overruled. Whether the court erred in disallowing the claim on the tenth cause of action is the sole question for decision on this appeal.

The facts found by the court bearing especially on this cause of action were these:

" When in the latter part of 1917 this arrangement was made the plaintiff's plant, its processes, business, and good will as a going concern were valuable, but what the value thereof was is not shown to the satisfaction of the court on the present record.

| | |
|---|---:|
| (3) Alterations and additions to the plant for storage purposes, including restoration: On this cause of action the Court of Claims awarded the plaintiff the sum of.... | $11,249.16 |
| (4) Extra protection demanded by the defendants: On this cause of action the Court of Claims awarded the plaintiff the sum of...... | 2,953.11 |
| (5) Wages paid unemployed labor from December 29, 1917, to March 23, 1918: On this cause of action the Court of Claims awarded the plaintiff the sum of...... | 3,013.52 |
| (6) Allowance on chemicals and materials left over after suspension of work: On this cause of action the Court of Claims awarded the plaintiff the sum of. | 3,877.87 |
| (7) Increased plant facilities: On this cause of action the Court of Claims awarded the plaintiff the sum of. | 20,000.00 |
| (8) Deductions made by defendants because of increased yardage resulting from treatment and for alleged loss in shipment: On this cause of action the Court of Claims awarded the plaintiff the sum of....... | 954.09 |
| (9) Insurance premiums paid by plaintiff in excess of that provided for: On this cause of action the Court of Claims awarded the plaintiff the sum of. | 2,960.68 |

Total amount awarded by Court of Claims... $47,700.08

"When Government work ceased in November, 1918, the plaintiff had no other business upon which it could continue the operation of its plant and it became idle. The cessation of hostilities left the Government with large quantities of goods on hand of the kind produced by the plaintiff company and by other concerns producing for the Government the same general character of goods. These goods were sold by the Government at different times in large lots at public auction and generally at prices below cost of production, and the sale of these goods by the Government supplied to a very considerable extent the demands of the trade for this class of goods. In an effort to reestablish its business and preserve the value attaching to its plant as an operating concern and in the belief that if normal conditions should be restored it could again do a profitable business, it has expended considerable sums of money, by operating at a loss, in keeping its business alive and its organization existent, and by reason of such efforts since the cessation of Government work it has sustained an operating loss of $125,000. It has not succeeded in reestablishing its business on a profitable basis, and its plant and business are now worth much less than before it took on Government work and devoted its facilities thereto."

Claimant contends here that it should be allowed to recover this $125,000 as expenses incurred in efforts to keep alive its business and organization to February, 1921, when the testimony was taken. The Dent Act does not permit any recovery on this ground. These were not "expenditures and obligations or liabilities necessarily incurred in performing or preparing to perform" the contract. Nor were they made or incurred prior to November 12, 1918. There was no breach of contract or wrongful act on the part of the United States in this connection. Nor was there a taking of property for which compensation can be made. It is urged here that the full

amount should be allowed to reimburse claimant for expenditures incurred at the plant in the early months of 1918, when it was idle because of the Government's delay in supplying goods for finishing. Some allowance for expenses incurred during that period was allowed under the fifth cause of action and is included in the $47,700.08 for which judgment was entered. For awarding more there is no basis in the findings. No request for additional findings appears to have been made below. Nor was leave sought there, or here, to reopen the case so that additional evidence could be introduced. The findings made are conclusive.[1]

*Affirmed.*

1. Section 418 of the Transportation Act, 1920, authorizes the Interstate Commerce Commission, when establishing divisions of joint rates, to consider not only what is just, reasonable and equitable as between all the carriers participating, but also the financial needs of particular carriers which should be supplied, in the public interest, in order to maintain them in effective operation as part of an adequate transportation system. P. 189.

2. Where joint rates among a group of carriers were increased by the Commission with special reference to the financial necessities of a part of them, a division, subsequently ordered, which gave the needy carriers a relatively greater share, to meet those necessities, but left the share of the others adequate to avoid a confiscatory

---

[1] There is nothing in *Roxford Knitting Co.* v. *Moore & Tierney,* 265 Fed. 177, or in *United States* v. *Russell,* 13 Wall. 623, which were relied upon by claimant, that lends support to its contention.