No. 36,602

Frank J. Sester, *Appellee*, v. The Belvue Drainage District, in Pottawatomie County, *Appellant*.

(173 P. 2d 619)

Opinion filed October 25, 1946.

*T. M. Lillard,* of Topeka, argued the cause, and *O. B. Eidson, Philip H. Lewis, James W. Porter,* all of Topeka, and *E. C. Brookens,* of Westmoreland, were with him on the briefs for the appellant.

*Matt Guilfoyle,* of Abilene, argued the cause, and *John H. Lehman,* of Abilene, *A. Harry Crane* and *E. S. Francis,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: This appeal involves the right of a landowner to re-cover damages from a drainage district arising by reason of the flow of water through a drainage ditch, which ditch was constructed pursuant to and under the authority of statutes known as the "Drainage Act of 1905" as amended, being G. S. 1935, 24-401 *et seq.* The action was brought previously to this court on appeal from an order of the district court overruling a demurrer to the appellee's pe-tition and the district court's ruling was affirmed. (See *Sester v. Belvue Drainage District,* 159 Kan. 143, 152 P. 2d 875.) As au-thority therefor we cited the holding of this court in the companion case of *Prickett v. Belvue Drainage District,* 159 Kan. 136, 152 P. 2d 870.

Following the appeals in the cited cases the present case was tried by a jury and such trial and the rulings of the district court on the post-judgment motions resulted in a judgment being entered against the drainage district for $3,500. The drainage district has appealed and the first error urged by the appellant in its brief is that the dis-trict court should have sustained the appellant's motion for judg-ment notwithstanding the general verdict on the special findings of the jury. If appellant's contention be correct the litigation is over.

The general facts developed from the evidence are very much the same as those set out in the above-cited cases and a detailed repe-tition of them is not necessary in order to consider the questions of law raised in the present appeal. However, in order to avoid re-peated reference to the cited decisions, a brief resumé of the es-sential facts may be helpful. It follows: Under its statutory power the appellant created a drainage ditch in 1931 . . . which was ten years before any of the alleged damages occurred . . . for the purpose of carrying into the Kaw river a part of the waters of the Vermillion river which would naturally have flowed into the Kaw river about a mile farther down the stream in Pottawatomie county near the city of Belvue. In connection therewith, by condemna-tion or direct conveyance, the drainage district acquired a strip of land 200 feet in width, immediately adjoining appellee's farm, within the confines of which the ditch extended from the Vermillion river to the Kaw for many years without apparently causing any dam-age to appellee's property. Appellee did not make any claim of any kind against the drainage district for damages at the time or soon

after the ditch originally was constructed. About ten years thereafter, there occurred in the vicinity of the appellee's farm two of the heaviest floods that had ever been known in the locality, according to the testimony of the appellee and his witnesses. The first flood occurred on the 10th of October and the second on the 20th. At the time of the floods the Vermillion river and Rock creek, which is a little stream northwest of appellee's farm, overflowed and approaches to bridges were washed out. As a consequence of the damages which were evident in the wake of the floods the appellant consulted an engineer for advice and recommendations as to what should be done to guard against a repetition of losses due to lack of flood control. The county had lost a number of steel spans and several small bridges due to the floods. In the course of the investigation made by the engineer certain members of the drainage district board met with him and viewed the site on the banks of the Vermillion river where the drainage ditch began. They determined that at the entrance of the ditch into the river there was a point of land which extended into the center of the river and on toward the center of the drainage ditch and it was decided that such point should be removed by dynamiting. According to the engineer the object of removing the point was to cause the water to flow in a more direct line down the center of the existing channel of the drainage ditch. The investigating parties were of the opinion, according to the testimony, that a whirlpool was being created at the mouth of the drainage ditch, which resulted in a turbulent water action causing erosion and widening of both banks of the ditch. After the dynamiting had been done by the appellant for the purpose of removing the point of land which projected into the junction of the ditch and the river, the appellee brought the present action to recover the damages which he alleged he sustained by reason of the flow of the waters thereafter through the drainage ditch. His closest neighbor, a Mr. Prickett, also brought an action to recover similar damages which he claimed to have sustained. The petitions in the two cases were very similar and raised the same questions of law insofar as demurrers thereto were concerned. (See *Sester v. Belvue Drainage District,* supra.) The point of land which was removed by the dynamiting was not owned by the appellee.

The foregoing brings us to consideration of what was held by this court in the case of *Prickett v. Belvue Drainage District,* supra. The decision, in referring to the petition filed in the Prickett case, reads as follows:

". . . It was clearly alleged [therein] that the purpose in widening and deepening the ditch at its north end at the time the Vermillion river was at flood stage was to divert into the ditch a larger volume of water than had been originally planned *and to cause the ditch to be enlarged along its course by erosion.* As a taking of property we see no substantial distinction between the purposed enlargement of a drainage ditch by putting into action the force of erosion and the same enlargement by mechanical means. Knowing, as they must be assumed to have known, the nature of the soil through which the ditch was constructed, the drainage district officers obviously widened and deepened the opening *for the very purpose of enlarging the ditch by erosion.* We think that a reasonable interpretation of the allegations of the petition requires that conclusion. This imputes no bad faith on the part of the drainage district officers. On the contrary, it fairly assumes that their action was for the purpose of averting a much greater damage to the property of others located within the district. Had the further appropriation of the plaintiff's land, of which he now complains, been contemplated when the original construction plan was adopted there certainly can be no question that he would have been entitled to recover for all damages properly allowable in a condemnation proceeding. Must we say that because plaintiff's property was taken in an emergency action when there was no time to follow the procedure for condemnation he is barred from recovery? We do not think the law requires so unjust a result." (Emphasis supplied.) (p. 141.)

From the above quotation it appears that the demurrer was overruled in the Prickett case because there had been an intentional enlargement of the ditch and more land taken by erosion through action which was equivalent to an emergency condemnation resorted to because there was not time to follow the statutory procedure. In such circumstances we held that the landowner should be entitled to recover "such additional compensation therefor as would properly be allowable in a condemnation proceeding under the statute." As before stated, the holding was followed in considering the demurrer to the petition in the instant case. The decision in the Prickett case considers and disposes of all other theories of liability and clearly holds that the demurrer was overruled solely because the proposed widening and deepening of the ditch at its north end was "to cause the ditch to be enlarged along its course by erosion." Perhaps in so holding, this court stressed the rule of liberal construction of pleadings almost beyond its power of adhesion but in view of our holding the appellee was entitled to trial upon issues limited by the theory of liability expressed in the Prickett case. At the conclusion of such trial the jury, in addition to its general verdict, answered certain special interrogatories as follows:

"2. In doing the dynamite work was it the plan and intention of the drainage district board and their engineer to:

"(a) Straighten the flow of the stream of the water flowing through the drainage ditch so that it would not swing from one side of the channel to the other and thereby cause erosion to its sides? A. Yes.

"(b) Or was it their purpose in doing the work to acquire more right of way to the south for the enlargement of the said drainage ditch, by deepening and widening of the channel where the work was done? A. No."

From the above answers it clearly appears that the jury found the drainage district board did not widen and deepen the opening of the ditch for "the very purpose of enlarging the ditch by erosion" as was said in the opinion in the Prickett case. Consequently, the jury, in substance, found that there was not "a taking of property . . . [for] the proposed enlargement of a drainage ditch by putting into action the force of erosion" rather than by "mechanical means" as was set forth also in the Prickett case. Thus it will be seen that the answers to the special questions completely negatived the appellee's basic contention that there had been an intentional widening and deepening of the drainage ditch for the purpose of enlarging it along its course. Therefore, unless we enlarge upon the basis for the holding in the Prickett case there can be no recovery on the part of the appellee in the instant case.

Counsel for appellee argue that the basic or fundamental right of the appellee is contained in the fifth amendment to the constitution of the United States, which reads:

". . . nor shall private property be taken for public use, without just compensation."

and in article 12, section 4 of the constitution of the state of Kansas, which reads:

"No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money or secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation."

In the Prickett case we also stated:

"Not only does the statute contemplate compensation for property taken or damaged but plaintiff's right of recovery is buttressed by the constitutional guarantees against the taking of private property for public use without compensation. That fundamental doctrine has been specifically applied to cases where land owners have had no opportunity to present their claims under the statutory procedure prescribed in drainage district laws. [citing cases.]" (p. 142.)

We did not hold therein, however, that the appellee was entitled to recover in any event because of constitutional guaranties. The

statement in the Prickett case merely followed from the theory of liability previously expressed therein that the petition had alleged in substance that there had been an intentional taking of land for the purpose of enlarging the ditch by natural means. Upon such a theory the statement was sound and cited cases amply supported it.

Appellee overlooks in his argument as to constitutional guaranties that the jury found there had not been an intentional "taking" or "appropriation" of the appellee's property. The right to sue a public body under the constitutional guaranties does not extend to cases where land is not actually taken but is only indirectly or consequentially damaged. There is a great difference between intentional taking of land in the exercise of governmental power and injury resulting to land as a consequence therefrom. A consequential injury is not a taking of private property for public use within the meaning of the Fifth Amendment. In the early case of *O. O. C. & C. G. Rld. Co. v. Larson,* 40 Kan. 301, 19 Pac. 661, paragraph two of the syllabus reads as follows:

"Subdivision 4, § 47, ch. 23, Comp. Laws of 1885, is not in contravention to § 4, art. 12 of the constitution of the state, or of the fifth amendment to the constitution of the United States; as the constitutional right to compensation for private property taken for public use does not extend to instances where the land is not actually taken, but indirectly or consequentially injured."

Nichols in his work on Eminent Domain (Vol. 1, 2d ed., p. 293), has the following to say:

"It is the prevailing and now almost universally accepted doctrine, in the absence of a special provision in the constitution to the contrary, that when a tract of land has been taken by legislative authority for the public use and the devotion of such land to the use for which it was taken injuriously affects neighboring land in a manner that would be actionable at common law if the injury had been committed by a private individual without legislative sanction, but does not substantially oust the owner from the possession of the land or deprive him of all beneficial use thereof, the owner of the injured land is not entitled to compensation under the constitution; for merely damaging property does not necessarily constitute a taking."

Technically, the fifth and, in fact, all of the first ten amendments to the federal constitution are limitations only on the power of the federal government and do not apply to the state. (See 16 C. J. S. 129, and, also, *State v. Newton,* 74 Kan. 561, 87 Pac. 757; *Jones v. Amrine,* 154 Kan. 630, at 633, 121 P. 2d 263 and *Garrison v. Amrine,* 155 Kan. 509, at 512, 126 P. 2d 228.) However, the constitutional prohibition pertaining to the state depriving a person of property without due process of law can be raised properly under section 1 of

the 14th Amendment to the federal constitution. The legal principle involved is the same whether raised under the fifth amendment or the fourteenth. Consequently, cases construing the fifth amendment are in point and should be given due consideration.

The United States Circuit Court of Appeals, for the Sixth Circuit, in *Franklin v. United States*, 101 F. 2d 459, after full review of the authorities, held:

"The construction by United States of dikes on bank and in bed of Mississippi river for purpose of changing current to improve navigation, which result after a year in washing away of plaintiffs' land on opposite side of river, was not a compensable 'appropriation' of plaintiffs' property within purview of the Fifth Amendment."

In *Salliotte v. King Bridge Co.*, 122 Fed. 378 (6 C. C. A.) it was held:

"The fact that the volume and force of the current of a navigable stream flowing against the bank on the land of a riparian owner have been increased by the construction of a bridge and the deepening of the channel on the side next his land, rendered necessary because of the construction of a pier in the middle of the stream, resulting in the washing of the bank, does not amount to a taking of his land."

In *Bedford v. United States*, 192 U. S. 217, 24 Sup. Ct. 238, 48 L. Ed. 414, in which case the federal agency was doing similar drainage protection work on the Mississippi pursuant to authority from congress, the court held:

"The injury from overflow and erosion to the lands of a riparian proprietor as the result of the action of the Mississippi river through a series of years is not such a direct consequence of the construction by the Federal government farther up the stream of a revetment along the banks, which did not change the course of the river as it then existed, but operated to prevent further changes, as to make such governmental action a taking of private property for public use within the meaning of the 5th Amendment to the Federal Constitution." (Headnote, L. Ed.)

The opinion by Mr. Justice McKenna continues in the cited case as follows:

"The principle contended for [by the landowners] seems necessarily wrong. Asserting the rights of riparian property, it might make that property valueless. Conceding the power of the government over navigable rivers, it would make that power impossible of exercise, or would prevent its exercise by the dread of an immeasurable responsibility." (p. 224.)

One of the leading cases holding to the same effect is *Brooks v. Cedar Brook & C. Imp. Co.*, 82 Me. 17, 19 Atl. 87, 7 L. R. A. 460, 17 Am. St. Rep. 459. The opinion reviews many earlier decisions

from various state and federal courts which are directly in point but which, in the interest of brevity, will not be quoted from herein. The rule as stated in 29 C. J. S. 920, § 111, is as follows:

"The general rule is that acts done in the proper exercise of governmental powers, or pursuant to authority conferred by a valid act of the legislature, and not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a taking, under constitutional or statutory requirements of compensation for property taken and do not entitle the owner of such property to compensation, in the absence of constitutional or statutory provisions requiring compensation to be made for damaging, injuring, or destroying property, such loss being *damnum absque injuria*."

Kansas does not have a statute or constitutional provision which permits the recovery of consequential damages resulting from flood control in instances wherein no part of the land has been taken by the administrative authorities. In 18 Am. Jur. 757, § 132, the rule is stated as follows:

"Acts done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use, do not amount to a taking of such property within the meaning of the ordinary constitutional provision that private property shall not be taken for public use without just compensation being made."

In support of the rule the text cites *Omnia Co. v. United States*, 261 U. S. 502, 67 L. Ed. 773, 43 S. Ct. 437; *Price Co. v. United States*, 261 U. S. 179, 67 L. Ed. 602, 43 S. Ct. 299; and *Miller v. Board of Public Works*, 195 Cal. 477, 234 Pac. 381, 38 A. L. R. 1479, and many other cases. See, also, *Jackson v. United States*, 230 U. S. 1, 33 S. Ct. 1011, 57 L. Ed. 1363; *Horstmann Co. v. United States*, 257 U. S. 138, 42 S. Ct. 58, 66 L. Ed. 171; *Christman v. United States*, 74 F. 2d 112; and *W. A. Ross Const. Co. v. Yearsley*, 103 F. 2d 589.

To hold that a drainage district is liable for all consequential damages which might result from its exercise of governmental authority would cast upon its members an incomprehensible accountability. At times in floods little lazy streams become destructive torrents and colossal, uncontrollable devastation may result. The unpredictable vicissitudes which follow efforts in furtherance of flood control are so partially providential in character that mere mortals should not be harassed by the hazard of representative responsibility. Unless a state sees fit to waive its sovereign immunity for such damages the courts cannot aid those who may

sustain loss by reason of possible mistakes made by those authorized to act in behalf of the state. Some states have enacted statutes which extend the state's liability to the point of allowing recovery for damages caused by public use, but Kansas has not. (See 18 Am. Jur. 753, § 129.)

Counsel for the appellee contend that the rule followed by the foregoing authorities is unsound and unfair because the damages sustained by the appellee are the same regardless of whether the drainage district board intended to enlarge the drainage ditch or whether the damages followed from an unintentional enlargement thereof. No authorities are cited in support of such contention. Following its logic, however, leads one along the legal lane of negligence. It can be said that the engineer and the members of the drainage district board should have known that deepening and widening the opening of the ditch would result in a larger flow of water through it and cause further erosion to its sides which ultimately might endanger improvements constructed upon appellee's property; that the members of the board must or should have known that soil conditions along the banks of the ditch were such that extensive erosion would occur as a consequence of a larger body of water passing through the ditch and should not have changed the opening or should have properly protected the banks of the ditch against erosion. If such be true, then the ultimate result is that the members of the board were negligent in not comprehending the situation or in not taking proper precautions to avoid the result. But there is no liability upon a drainage district for the negligent acts of its representatives because it is created as a governmental agency and the work done is governmental in character. (See *Todd v. Drainage District,* 109 Kan. 754, 201 Pac. 1096, 33 A. L. R. 64, and the opinion written by the present Mr. Chief Justice Harvey in *State, ex rel., v. Kaw Valley Drainage District,* 126 Kan. 43, 267 Pac. 31, and other cases cited in *Prickett v. Belvue Drainage District,* supra.)

It should be noted that the only land belonging to the appellee which is no longer available for use by him by reason of the enlargement or encroachment of the drainage ditch is a very small area which the jury found to be 1,000 square feet and valued at four dollars. However, the evidence is convincing that such land was lost to the appellee by reason of water flowing across appellee's land from the west through a natural swale or gully which always

had existed on appellee's land. The water coming from the west through the swale in times of flood flowed into the drainage ditch, undermined its bank and caused it to fall in at the point where the gully reached the ditch. It is clear that such action was not caused by water flowing through the ditch but was caused by water coming down the fields through the swale, and the appellee so testified. All of the evidence touching upon the point was to such effect and no reasonable mind could reach any other conclusion. Therefore, it cannot fairly be said in the instant case that any land belonging to the appellee actually was taken by erosion caused by the turbulent action of the water running through the drainage ditch.

For the reasons given, the judgment of the district court is reversed, with instructions to enter judgment for the appellant.

HARVEY, C. J., SMITH and PARKER, JJ., dissent.