**WOODLAND MARKET REALTY COMPANY, Plaintiff-Appellant,**

v.

**CITY OF CLEVELAND, East 55th-Woodland Improvement Company, and Frank M. Brennan, Cuyahoga County Treasurer, Defendants-Appellees.**

No. 19515.

United States Court of Appeals,
Sixth Circuit.

May 19, 1970.

Charles S. Tricarichi, Cleveland, Ohio, for plaintiff-appellant; Tricarichi & Carnes, Cleveland, Ohio, on the brief.

James P. Mancino, Cleveland, Ohio, for defendants-appellees; Clarence L. James, Jr., Director of Law, George J. Dinda, Asst. Director of Law, Cleveland, Ohio, for City of Cleveland, Robert W. Sharp; Hauxhurst, Sharp, Mollison & Gallagher, Cleveland, Ohio, for East 55th-Woodland Improvement Co., Fred H. Hilow, Cleveland, Ohio, for Frank Brennan, Cuyahoga County Treasurer, on the brief.

Before EDWARDS and McCREE, Circuit Judges, and WILSON *, District Judge.

FRANK W. WILSON, District Judge.

This case presents an appeal from the action of the District Court in sustaining a motion for summary judgment and dismissing a property owner's action against a municipality for losses alleged to have been sustained in connection with the establishment of an urban renewal

---

\* Honorable Frank W. Wilson, United States District Judge for the Eastern District of Tennessee, sitting by designation.

project. Woodland Market Realty Company, an Ohio corporation, filed this action in the District Court alleging that it held a leasehold interest in certain commercial property located within the City of Cleveland, Ohio, and averring that the value of its leasehold interest had been destroyed by the activities of the City of Cleveland in establishing an urban renewal project. Averring that the actions of the City amounted to a taking of its property without just compensation, contrary to the Fifth and Fourteenth Amendments of the Federal Constitution, the appellant (plaintiff below) sought to recover of the City for the loss in value of its leasehold interest. Also joined as parties defendant were the lessor, East 55th-Woodland Improvement Company, and the County Treasurer of Cuyahoga County, Frank M. Brennan, the latter two being joined as parties insofar as they may have any interest in the rights asserted or in the recovery sought.

Interpreting the initial complaint as sounding in tort, the District Court entered an order dismissing the complaint for lack of federal diversity judisdiction, but at the same time permitted the plaintiff to amend its complaint, which it promptly did.

The amended complaint alleged that the plaintiff was the lessee of a tract of commercial property located at the corner of Woodland Avenue and East 55th Street in Cleveland, Ohio, under a 99 year renewable lease. The plaintiff had constructed a market building housing a number of retail food markets on the property, the tenants having themselves formed Woodland Realty Company for the purpose of acquiring the lease and the building. Beginning in 1955 the City of Cleveland instituted an urban renewal project known as the "Gladstone Urban Renewal Project." It was alleged that the plaintiff's property was included within the urban renewal project as originally established, but later excluded, while the City retained within the project all adjacent property. Thereafter the City acquired the adjacent property, including a parking lot belonging to the plaintiff, and removed all inhabitants, dwellings, and structures from the area, thereby depriving the plaintiff of its tenants, thus destroying the value of its leasehold. The action of the City in first including and then excluding the plaintiff's property from the Gladstone Urban Renewal Project was alleged to be an attempt by the City to deprive the plaintiff of its property and to amount to an intentional taking of the property without due process of law.

To these allegations of the amended complaint the City of Cleveland filed a motion for summary judgment (which motion was later adopted by the lessor, East 55th-Woodland Improvement Co.). The motion was accompanied by verified copies of the various municipal ordinances and records relating to the establishment of the Gladstone Urban Renewal Project and by affidavits of municipal officials having knowledge of the project. The substance of these exhibits and affidavits was to establish that, although in the preliminary planning stages the Woodland Market tract was included within the proposed project area, it was excluded prior to any official action and was never a part of the project as established by ordinance. Rather, it at all times remained adjacent to but outside the project. These matters were not disputed by the plaintiff and no counter-affidavits were filed.

On the basis of the record as thus established, the District Court concluded that no genuine issue of fact existed but that there had been no intentional taking of the plaintiff's property and no exercise by the City of the right of eminent domain. Relying upon Foster v. Herley, 330 F.2d 87 (C.A.6, 1964) and Foster v. City of Detroit, 405 F.2d 138 (C.A.6, 1968), and concluding that the loss of customers and income was no more than consequential damages, unrecoverable in an action of this nature, the District Court sustained the motion for summary judgment and dismissed the lawsuit.

The appellant contends that the District Court was in error in sustaining the motion for summary judgment in that the Court misconstrued the amended complaint as averring that the plaintiff's losses were occasioned by the City initiating eminent domain action without completing such action, when in fact the plaintiff's allegation and theory was that the plaintiff's losses were occasioned by the City acting with the express or implied intention of taking the plaintiff's property but without ever using its eminent domain powers. The appellant further contends that the District Court was in error in relying upon the *Foster* cases, *supra*, since those cases involve property losses occasioned by the initiation of condemnation action followed by the abandonment thereof.

■ It is clear from the undisputed facts in this case that there has been no taking of the plaintiff's property by the City of Cleveland within the meaning of the Fifth and Fourteenth Amendments requiring payment of just compensation. The losses occasioned to the plaintiff were not the result of any intrusion or encroachment by the City upon the plaintiff's property. Rather, the plaintiff's losses were occasioned by the loss of customers when the former residential area in the vicinity of plaintiff's market was transformed into vacant and undeveloped land by the Gladstone Urban Renewal Project. Loss of customers is not a taking of property in a constitutional sense, though it may result in a loss of land value. The action of the City has resulted in no diminution of the plaintiff's rights in its property. Its leasehold estate has remained intact. What has altered is the character of the neighborhood, not the character of the plaintiff's leasehold interest. Actions done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use or value, do not amount to a taking of such property within the meaning of the constitutional provision that private property shall not be taken for public use without

just compensation. Price Fire & Water Proofing Co. v. United States, 261 U.S. 179, 43 S.Ct. 299, 67 L.Ed. 602 (1923); Gibson v. United States, 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996 (1897).

■ The plaintiff lays great emphasis on the loss or damage sustained by it as a consequence of the urban renewal project, and would have the Court equate such loss or damage to a taking of the property requiring just compensation. However, damage or loss does not of itself create a taking. Whether property has been taken for a public use so as to require just compensation is determined by the character of the invasion, not by the amount of damage suffered. United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917). As held in the case of Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924), damage from the proposed use of land taken from others does not constitute a taking of the property of one whose lands are decreased in value by such use.

■ The plaintiff would urge that the circumstances of the omission of its property from the Gladstone Urban Renewal Project were such as to indicate an implied, if not express, intention on the part of the City to take its property. However, the determination of the extent of property to be condemned is a legislative not a judicial function and, as pointed out by the United States Supreme Court in Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), the drawing of boundary lines for a public project is a matter of legislative discretion. The lines for an urban renewal project must be drawn somewhere and it is for the legislature, not the judiciary, to say where those lines are to be. The Cleveland City Council, in the exercise of its legislative discretion, determined the boundaries of the Gladstone Urban Renewal Project. As so determined, those boundaries have never included the plaintiff's property. The Court cannot infer from the drawing of the lines a legislative intent to take property adjacent to but outside of the boundaries thus

established. Otherwise, the taking would never end.

The plaintiff relies upon the case of Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. 166, 20 L.Ed. 557 (1871), and a line of cases following *Pumpelly*, as support for its contention that the loss of value occasioned to its property by the Gladstone Urban Renewal Project amounted to a taking of its property. See Bridge Co. v. United States, 105 U.S. 470, 26 L.Ed. 1143 (1881); Skaneateles Water Co. v. Skaneateles, 184 U.S. 354, 367, 22 S.Ct. 400, 46 L.Ed. 585 (1902); Penn. Coal Co. v. McMahon et al., 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); United States v. Causby, 328 U.S. 256, 68 S.Ct. 1062, 90 L.Ed. 1206 (1946); Eyherabide v. United States, 345 F.2d 565, 170 Ct.Cl. 598 (1965). However, each of the cases cited by the plaintiff in this regard either fails to support the contention for which it was cited or involves a direct and actual intrusion upon the landowner's property. *Pumpelly, supra,* involved a flooding of the plaintiff's land by the construction of a dam. Bridge Co. v. United States, *supra,* cited by the plaintiff for a statement in a dissent, involved increased costs due to congressional modification in the construction requirements for a bridge being built over navigable waters. Skaneateles Water Co. v. Skaneateles, *supra,* construed the *Pumpelly* decision as limited to physical invasion of property. Penn. Coal Co. v. McMahon, *supra,* was not an eminent domain case. United States v. Causby, *supra,* involved an intrusion upon land by the regular flight of aircraft at a low altitude and immediately above the plaintiff's property. Eyherabide v. United States, *supra,* involved an actual intrusion on the plaintiff's property by artillery shells. The only allegation of an actual intrusion in the principal case was the averment that the taking of the plaintiff's parking lot was one source of injury to its market building. It is conceded on the appeal, however, that the plaintiff was compensated for the taking of its parking lot, presumably including any incidental damages as a result of that taking.

When reduced to its essence, the issue presented upon this appeal is whether a property owner having property adjacent to an urban renewal project may maintain an action for compensation under the Fifth and Fourteenth Amendments of the Federal Constitution for depreciation in the value of his property by reason of the establishment of the project. This Court is of the opinion that he cannot.

The judgment of the lower court will be affirmed.